TANYA L. GREENE (SBN 267975)
tanya.greene@us.dlapiper.com
DAVID B. FARKAS (SBN 257137)
david.farkas@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400
North Tower, Los Angeles, CA 90067
Tel.: 310.595.3000
Fax: 310.595.3300

JOHN P. FRANTZ (*pro hac vice* forthcoming)
john.frantz@us.dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

CARLO F. BUSTILLOS (SBN 347318)
**DLA PIPER LLP (US)**
555 Mission Street, Suite 3400
San Francisco, CA 94105-2933
Tel.: 415.836.2500
Fax: 415.836.2501

Attorneys for Defendant
SHUTTERFLY, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN NELSON, individually and on behalf of all others similarly situated, <br><br><br>*Plaintiff*, <br><br> v. <br><br> SHUTTERFLY, LLC, <br><br> *Defendant*. | Case No. 3:26-cv-01900-AMO <br><br> **DEFENDANT SHUTTERFLY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER** <br><br> **Hearing Information:** <br> Date:        August 6, 2026 <br> Time:        2:00 p.m. <br> Judge:       Hon. Araceli Martínez-Olguín <br> Courtroom:   10 <br><br> Complaint Filed: March 4, 2026 |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT on August 6, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Araceli Martínez-Olguín, in Courtroom 10 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Shutterfly, LLC ("Shutterfly") will, and hereby does, move for an order (1) dismissing Plaintiff Justin Nelson's ("Plaintiff") Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, (2) transferring this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

Shutterfly moves to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) Plaintiff nowhere alleges that he received any text message from Shutterfly because the phone is his wife's and not his; (2) Plaintiff did not register the telephone number on the National Do-Not-Call Registry, and the Complaint's timeline forecloses any possibility that he did; (3) the private right of action under 47 U.S.C. § 227(c)(5) does not extend to text messages; and (4) Plaintiff lacks Article III standing, and this Court therefore lacks subject matter jurisdiction under Rule 12(b)(1).

In the alternative, Shutterfly moves to transfer this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a) on the following grounds: (1) the case could have been brought in the Eastern District of Michigan; and (2) transfer to the Eastern District of Michigan would promote the convenience of the parties and witnesses and the interest of justice.

This Motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the concurrently-filed Declarations of Tanya Greene and Jennifer Broker, Shutterfly's Request for Judicial Notice, all pleadings and papers on file in this matter, and upon such argument and other matters as may be presented at the time of the hearing or otherwise.

DATED: May 6, 2026                    **DLA PIPER LLP (US)**

By: */s/ Tanya L. Greene*
    TANYA L. GREENE
    JOHN P. FRANTZ*
    DAVID B. FARKAS
    CARLO F. BUSTILLOS

    *Attorneys for Defendant*
    *SHUTTERFLY, LLC*

    *\*Pro hac vice forthcoming*

DEFENDANT SHUTTERFLY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER
3:26-CV-01900-AMO

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION.........................................................................................................1

II. SUMMARY OF PLAINTIFF'S ALLEGATIONS AND OTHER KEY FACTS .............2

III. LEGAL STANDARD ...............................................................................................3

    A. Standard of Review for Motion to Dismiss Under Rule 12(b)(6).........................3

    B. Standard of Review for Motion to Dismiss Under Rule 12(b)(1)........................4

    C. Standard of Review for Motion to Transfer Under Section 1404(a)....................4

IV. ARGUMENT .............................................................................................................5

    A. The Complaint Should Be Dismissed Because Plaintiff Did Not Allege He Received the Messages at Issue............................................................................5

    B. The Complaint Should Be Dismissed for Lack of Article III Standing. ................7

    C. The Complaint Should Be Dismissed Because Plaintiff Did Not Register the Number on the National Do-Not-Call Registry. ......................................................8

    D. The Complaint Should Be Dismissed for Failure to State a Claim Because Texts Are Not Telephone Calls Under 47 U.S.C. § 227(c)(5). ............................13

    E. If The Case Is Not Dismissed, It Should Be Transferred to The Eastern District of Michigan. ..........................................................................................17

        1. The Case Could Have Been Brought in The Eastern District of Michigan..............................................................................................17

        2. Transfer to the Eastern District of Michigan Would Advance Convenience and the Interest of Justice. ................................................18

V. CONCLUSION ........................................................................................................20

DEFENDANT SHUTTERFLY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER
3:26-CV-01900-AMO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahamian v. loanDepot.com LLC*,
   No. 2:23-cv-00728-PHX-SMB, 2024 WL 1092442 (D. Ariz. Mar. 13, 2024)......................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................3, 4

*Baker v. Caribbean Cruise Line, Inc.*,
   No. CV 13-8246-PCT-PGR, 2014 WL 880634 (D. Ariz. Mar. 6, 2014)...............................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................................4

*Binetti v. Colo. Tech. Univ.*,
   No. 6:25-cv-01049-AP, 2026 WL 812365 (D. Or. Jan. 21, 2026)....................................10, 11

*Cardoza v. T-Mobile USA, Inc.*,
   No. 08-5120 SC, 2009 WL 723843 (N.D. Cal. Mar. 18, 2009)..............................................20

*City of Culver City v. Fed. Aviation Auth.*,
   167 F.4th 1260 (9th Cir. 2026) ..................................................................................................4

*Davis v. CVS Pharmacy, Inc.*,
   797 F. Supp. 3d 1270 (N.D. Fla. 2025)....................................................................... 13, 14, 17

*Dilanyan v. Hugo Boss Fashions, Inc.*,
   No. 2:25-cv-05093-JLS-BFM, 2025 WL 3549868 (C.D. Cal. 2025) ...............................14, 16

*Esquivel v. Mona Lee, Inc.*,
   No. 3:25-cv-00607-H-BLM, 2025 WL 3275607 (S.D. Cal. Nov. 24, 2025)....................15, 16

*Foster v. Nationwide Mut. Ins. Co.*,
   No. C 07-04928, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ............................................19

*Garcia v. 3M Co.*,
   No. C-09-01943 RMW, 2009 U.S. Dist. LEXIS 112247 (N.D. Cal. Nov. 13,
   2009)........................................................................................................................................20

*Hall v. Smosh Dot Com*,
   72 F.4th 983 (9th Cir. 2023)...................................................................................................7, 8

*Howard v. Republican National Committee*,
   164 F.4th 1119 (9th Cir. 2026).................................................................................................15

*Irvin v. Sonic Indus. Servs., LLC*,
No. 3:25-cv-00242-LMM, 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026) .............................. 14

*James v. Smarter Contact, Inc.*,
No. 8:25-cv-1657-KKM-SPF, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026)............. 13, 15, 17

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025)................................................................ 13, 15, 17

*Kempton v. Life for Relief & Dev. Inc.*,
No. CV-19-02156-PHX-DJH, 2019 WL 5188750 (D. Ariz. Oct. 15, 2019) .......................... 20

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)........................................................................................ 3

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......................................................................................... 14, 16

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987)....................................................................................... 19

*Luna v. Shac, LLC*,
No. C14-00607 HRL, 2014 WL 3421514 (N.D. Cal. July 14, 2014) .................................... 17

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
606 U.S. 146 (2025) .......................................................................................... 14, 16

*Metz v. U.S. Life Ins. Co. in City of N.Y.*,
674 F. Supp. 2d 1141 (C.D. Cal. 2009)........................................................... 4, 5, 17

*Moser v. Health Ins. Innovations, Inc.*,
2018 WL 325112 (S.D. Cal. Jan. 5, 2018) ........................................................... 18

*Neff v. Towbin Dodge LLC*,
No. 2:20-cv-00261-JAM-DMC, 2020 WL 6802188 (E.D. Cal. Nov. 19, 2020) .................... 18

*Nelson v. Adwora LLC*,
No. 2:26-cv-10423 (E.D. Mich. Feb. 6, 2026) ............................................................ 2, 5, 18

*Nelson v. Capital Vision Services, LLC*,
No. 5:26-cv-10275-JEL-KGA (E.D. Mich. Jan. 27, 2026)........................................ 2, 5, 6, 18

*Nichols v. eHealthInsurance Servs. Inc.*,
No. 23-cv-06720-EKL, 2025 WL 689721 (N.D. Cal. Mar. 3, 2025).............................. 10, 12

*Oliver v. Lyft, Inc.*,
No. C 19-01488 WHA, 2019 WL 2342263 (N.D. Cal. June 3, 2019).................................... 20

*Radvansky v. 1-800-Flowers.com, Inc.*,
No. 1:25-cv-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .................................... 16, 17

*Richards v. Fashion Nova, LLC*,
    2026 WL 847568 (S.D. Ind. Mar. 26, 2026) ................................................................... 17

*Rogers v. Assurance IQ, LLC*,
    No. 2:21-cv-00823, 2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ..................................... 9

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
    No. 22-cv-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022) .......................... 9, 11

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ............................................................................ 15, 16

*Sayed v. Naturopathica Holistic Health, Inc.*,
    No. 8:25-cv-00846-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ...................... 17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................... 4, 7

*Stockdale v. Skymount Prop. Grp., LLC*,
    No. 1:25 CV 1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026) ......................... 13, 15, 16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................. 3

*Twitter, Inc. v. Holder*,
    183 F. Supp. 3d 1007 (N.D. Cal. 2016) ...................................................................... 4

*Vu v. Ortho-McNeil Pharm., Inc.*,
    602 F. Supp. 2d 1151 (N.D. Cal. 2009) .................................................................... 18

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................................. 4

*Wilson v. MEDVIDI Inc.*,
    No. 5:25-cv-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ......................... 15, 16

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................................ 3

**Statutes**

15 U.S.C. § 6155(b) ................................................................................................. 10

28 U.S.C. § 1404(a)..................................................................................... 1, 4, 18, 20

47 U.S.C. § 227 ............................................................................................. 11, 12, 13

47 U.S.C. § 227(a)(4) ......................................................................................... 13, 14

47 U.S.C. § 227(c)(3)(F) ........................................................................................... 12

47 U.S.C. § 227(c)(3)(F)'s .................................................................................................. 12

47 U.S.C. § 227(c)(5) .................................................................................................*passim*

47 U.S.C. § 227(e)(8)(A)-(C) .......................................................................................... 14

Fla. Stat. § 501.059(1)(j) ................................................................................................. 14

N.C. Gen. Stat. § 75-101 ................................................................................................. 14

2019 N.C. Sess. Laws 188 ............................................................................................... 14

TCPA .......................................................................................................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200 ......................................................................................................... 12

47 C.F.R. § 64.1200(c) .................................................................................................. 6, 9

47 C.F.R. § 64.1200(c)(2) ................................................................................. 8, 10, 11, 12

Black's Law Dictionary .................................................................................................... 16

Fed. R. Civ. P. 8 ................................................................................................................. 3

Fed. R. Civ. P. 8(a) ............................................................................................................ 3

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 1, 4

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1, 3, 13

Fed. R. Evid. 201(b) ....................................................................................................... 3, 4

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 Fed. Reg. 44,144, 44,166 (July 25, 2003) ................................................. 15

*Targeting & Eliminating Unlawful Text Messages*, 89 Fed. Reg. 5,098, 5,101 (Jan. 26, 2024) ................................................................................................................ 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is the product of a coordinated Telephone Consumer Protection Act ("TCPA") litigation campaign. Within the span of three months, Plaintiff Justin Nelson ("Plaintiff") and his wife, Michele Nelson, through shared counsel, have filed at least eight TCPA putative class actions—six involving the same cellular telephone number at issue here. In this case, it is Mr. Nelson who appears as the sole plaintiff, asserting a TCPA claim against Shutterfly based on text messages allegedly sent to his wife's phone. Mrs. Nelson maintains an active account with Shutterfly and agreed to Shutterfly's Terms of Use, which include a binding arbitration provision and a waiver of the right to participate in a class action. *See* Declaration of Jennifer Broker ("Broker Decl.") at ¶¶ 4, 12, Ex. A at pp. 7-8.

Shutterfly moves to dismiss under Rule 12(b)(6) on three independent grounds. *First*, Plaintiff nowhere alleges that he received any text message from Shutterfly, because the mobile phone is his wife's and not his own. *Second*, Plaintiff did not register the telephone number on the National Do-Not-Call Registry as required by the applicable regulations, and the Complaint's timeline forecloses any possibility that he did. *Third*, the private right of action under 47 U.S.C. § 227(c)(5) is limited to "telephone call[s]" and does not extend to text messages. Shutterfly further moves to dismiss under Rule 12(b)(1) because Plaintiff cannot demonstrate that he suffered a concrete injury sufficient to confer Article III standing based on messages that were sent to his wife's phone and not to him.

Alternatively, if the Court does not dismiss this action, Shutterfly moves to transfer the case to the Eastern District of Michigan under 28 U.S.C. § 1404(a). Michigan is Mr. and Mrs. Nelson's home forum, where the bulk of the witnesses and evidence reside, and where several of the Nelsons' related TCPA actions—involving the same phone number at issue here—are already pending. Transfer would promote judicial efficiency: the common factual issues across the Nelsons' complaints should be resolved in a single forum, not piecemeal by courts across the country at the behest of two Michigan residents with no connection to California.

DEFENDANT SHUTTERFLY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER
3:26-CV-01900-AMO

## II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS AND OTHER KEY FACTS

Plaintiff brings this putative class action against Shutterfly under the TCPA alleging that Shutterfly delivered unsolicited marketing text messages to cellular telephone number (517) 769-XXXX in August, November, and December of 2025, despite that number having been registered on the National Do-Not-Call Registry since November 13, 2024. (ECF 1, "Compl." ¶¶ 16-17, 21-22). Plaintiff claims he has been the subscriber of this number since June 2025 and that the messages were sent more than thirty-one days after the number's registration. (Compl. ¶¶ 9, 19). He seeks statutory damages of up to $500 per violation, trebled for willful or knowing conduct, on behalf of himself and a nationwide class. (Compl. ¶ 40).

This action is part of an extensive pattern of TCPA litigation by Plaintiff and his wife, Michele Nelson. Within a span of approximately three months, the Nelsons and their shared counsel have filed at least eight TCPA class actions, six of which involve the (517) 769-XXXX telephone number. Declaration of Tanya Greene ("Greene Decl.") at ¶¶ 6-13, Exs. 4-11. The allegations in these related complaints, which are judicially noticeable, establish that the phone number at issue in this case belongs to Mrs. Nelson, not Plaintiff. In her own complaint, *Nelson v. Capital Vision Services, LLC*, No. 5:26-cv-10275-JEL-KGA (E.D. Mich. Jan. 27, 2026), Michele Nelson referred to (517) 769-XXXX as "her cell phone number," claimed she was the "subscriber," and alleged she "does not have any other telephone numbers." Greene Decl. at ¶ 12, Ex. 10 at ¶¶ 6, 8-10. In the *Nelson v. Adwora, LLC* complaint, No. 2:26-cv-10423-DPH-CI (E.D. Mich. Feb. 6, 2026), Plaintiff Justin Nelson himself described the phone number as belonging to "Plaintiff's Spouse," noting that "Plaintiff's Spouse uses the cell phone number for personal use only" and "uses the cell phone primarily to communicate with friends and family." Greene Decl. at ¶ 6, Ex. 4 at ¶¶ 11-13. These allegations constitute party admissions by Plaintiff and his wife. By contrast, the instant Complaint conspicuously avoids identifying the phone's owner and user, referring to the number only in the passive voice. *See, e.g.,* Compl. ¶¶ 10-11 ("the telephone number was used as a personal residential telephone number" and "[i]t is used for personal use only . . ."). Plaintiff's use of the passive voice here—viewed alongside his own admissions in *Adwora*—is not inadvertent, but rather evasive strategic phrasing. Moreover, Shutterfly's counsel asked Nelson's counsel to provide the alternative

-2-

telephone numbers if the numbers alleged across the complaints were different. To date, Plaintiff's counsel has not responded or provided any alternative numbers. Greene Decl. at ¶ 17.

Michele Nelson holds a Shutterfly account, created on September 9, 2022, with logins on February 1, 2026—one month before this case was filed—and again on April 8—just weeks after. Broker Decl. at ¶ 7. Each time she logged into her Shutterfly account, Mrs. Nelson reaffirmed her consent to Shutterfly's Terms of Use. Broker Decl. at ¶ 11. These terms include dispute resolution provisions containing both a binding obligation to arbitrate "any dispute, claim, or controversy arising out of or relating in any way to a Shutterfly product or service" and a waiver of "the right to a trial by jury or to participate in a class action." Broker Decl. at ¶ 12, Ex. A at pp. 7-8.

## III.    LEGAL STANDARD

### A.    Standard of Review for Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted[.]" On a motion to dismiss, "courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Further, Federal Rule of Evidence 201(b) enables the Court to take judicial notice of facts, at any stage of litigation, that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (A "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.") (internal quotation marks omitted). The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

### B.    Standard of Review for Motion to Dismiss Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal for "lack of subject-matter jurisdiction[.]" A court must dismiss a complaint if Plaintiff does not and cannot establish the required elements of standing. *See Twitter, Inc. v. Holder*, 183 F. Supp. 3d 1007, 1010 (N.D. Cal. 2016). To establish standing, plaintiffs must "show[] (1) an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent'; (2) a 'causal connection between the injury and the conduct complained of'; and (3) that a favorable decision will redress their injury." *City of Culver City v. Fed. Aviation Auth.*, 167 F.4th 1260, 1264 (9th Cir. 2026) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("We have made it clear time and time again that an injury in fact must be both concrete and particularized."). Further, litigants are generally "bar[red] from asserting the rights or legal interests of others in order to obtain relief from injury themselves." *Warth v. Seldin*, 422 U.S. 490, 509 (1975). Courts may consider evidence outside the pleadings to resolve standing challenges brought under Rule 12(b)(1). *See, e.g.,* Fed. R. Evid. 201(b); *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975).

### C.    Standard of Review for Motion to Transfer Under Section 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) (quoting *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal. 2005)).

Courts in the Ninth Circuit analyze Section 1404(a) motions using a two-part analysis. First,

-4-

"the defendant must establish that the matter 'might have been brought' in the district to which transfer is sought." *Metz*, 674 F. Supp. 2d at 1145. Second, the Court must consider whether the following three factors weigh in favor of transfer: "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice." *Id.*

## IV.    ARGUMENT

### A.    The Complaint Should Be Dismissed Because Plaintiff Did Not Allege He Received the Messages at Issue.

The TCPA defines, with precision, the elements for a private cause of action for violations of the FCC's Do-Not-Call regulations. Section 227(c)(5) grants a private right of action only to "[a] person *who has received* more than one telephone call within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added). Receipt is an element of the claim—not a formality. Plaintiff nowhere alleges that he received any message from Shutterfly. Instead, he alleges merely that "Defendant delivered, or caused to be delivered, text messages to telephone number (517) 769-XXXX." (Compl. ¶ 17). This is insufficient to state a claim. Indeed, in the absence of an allegation of receipt, Plaintiff is not even a member of the class he seeks to represent. *See* Compl. ¶ 27 (putative class comprised of people "who received more than one telemarketing call from or on behalf of Defendant"). This is an explicit acknowledgment from Plaintiff that receipt is a required element of his claim.

Plaintiff elides this critical issue by retreating into the passive voice in framing his most central allegations. However, the other complaints filed by Plaintiff and Mrs. Nelson make clear that the phone and the attendant number are hers and not his. The key details are found in the Nelsons' first-filed complaint in *Nelson v. Capital Vision Services, LLC*, where Mrs. Nelson is the plaintiff based on a TCPA claim related to the same phone number, and *Nelson v. Adwora, LLC*, where Mr. Nelson is the plaintiff. Greene Decl. at ¶¶ 6, 12, Exs. 4, 10. A comparison of the relevant allegations in those two cases with the allegations here, all related to the same phone number, frame the issue definitively.

| *Capital Vision* (Mrs. Nelson plaintiff) | *Adwora* (Mr. Nelson plaintiff) | *Complaint Here (Shutterfly)* (Mr. Nelson plaintiff) |
|---|---|---|
| "Plaintiff uses her cell phone number for personal use only as one would use | "Plaintiff's spouse uses the cell phone number for personal use only as one | "It is used for personal use only as one would use a |

| a landline telephone number in a home." (¶ 10) | would use a landline telephone number in a home." (¶ 12) | landline telephone number in a home." (¶ 11) |
|---|---|---|
| "Plaintiff uses her cell phone primarily to communicate with friends and family, and to schedule personal appointments and for other household purchases." (¶ 11) | "Plaintiff's spouse uses the cell phone primarily to communicate with friends and family, and to schedule personal appointments and for other household purchases." (¶ 13) | "It is used primarily to communicate with friends and family, and to schedule personal appointments and for other household purchases." (¶ 12) |
| "Plaintiff does not have any other telephone numbers." (¶ 12) | No such allegation. | No such allegation. |

The Complaint's attempts to connect Plaintiff to the phone number at issue are insufficient to meet the statutory requirement that Plaintiff himself received more than one telephone call. The Complaint alleges that Plaintiff has been the subscriber of the cellular telephone number at issue since June 2025. (Compl. ¶ 9). But subscriber status does not create a right of action under § 227(c)(5). The statute establishes as an element of the claim that the person must have "received" calls. 47 U.S.C. § 227(c)(5). While 47 C.F.R. § 64.1200(c) references "subscribers," that regulation does not define or expand the statutory right of action, which extends only to recipients of calls who also suffered a violation of applicable FCC regulations. 47 U.S.C. § 227(c)(5).[1] Likewise, the Complaint's assertion that Plaintiff "personally pays for this cell phone plan[,]" (Compl. ¶ 13), is similarly unavailing.[2] The statute does not grant a cause of action to the payor of a phone bill. Rather, it grants a cause of action to the person who "received" the calls.

Because the Plaintiff has not alleged—and his own party admissions would contradict any allegation—that he received the text messages at issue, the Complaint must be dismissed with prejudice for failing to state a claim.

---

[1] Mrs. Nelson also alleged that she is the "subscriber" to this same number in her complaint in *Nelson v. Capital Vision Services*. Greene Decl. at ¶ 12, Ex. 10 at ¶ 8.

[2] Mrs. Nelson likewise made the same allegation regarding payment in her complaint in *Nelson v. Capital Vision Services*. Greene Decl. at ¶ 12, Ex. 10 at ¶ 13.

**B.**    <u>**The Complaint Should Be Dismissed for Lack of Article III Standing.**</u>

The Plaintiff also lacks Article III standing. He alleges no facts showing that he personally received or was interrupted by any of the alleged messages—because he was not. The phone is not his.

The Complaint's only allegation of harm is the conclusory assertion that "Plaintiff suffered actual harm as a result of the subject text messages in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance." (Compl. ¶ 24). This boilerplate recitation is insufficient to establish the concrete, particularized injury required by the Supreme Court's decision in *Spokeo*. Even where Congress has identified cognizable TCPA injuries, a plaintiff must still allege *some* facts consistent with having suffered them. *Spokeo*, 578 U.S. at 342. Plaintiff alleges none. He does not claim to have received or been interrupted by a single message.

Plaintiff will likely rely on the Ninth Circuit's decision in *Hall v. Smosh Dot Com*, 72 F.4th 983 (9th Cir. 2023), but that decision does not extend to the materially different facts alleged here. In *Hall*, the plaintiff alleged she was the "owner and subscriber" of the phone, that she personally placed its number on the Do-Not-Call Registry "to obtain solitude from invasive and irritating solicitation calls and to protect her minor son[,]" and that she permitted her son to use the phone "at times," indicating shared or supervised use. (*Id.* at 986-88). Plaintiff here alleges none of those facts. He does not allege that he owns the phone and has admitted in other complaints that the phone belongs to his wife. (Compl. ¶ 9); Greene Decl. at ¶ 6, Ex. 4 at ¶¶ 11-13. He likewise does not allege he placed his number on the Do-Not-Call Registry, instead using only the passive construction that it "has been registered[,]" (Compl. ¶ 16), so he has taken no affirmative steps to place himself in the zone of interests protected by the statute. And unlike *Hall*, where a mother allowed a minor child to use a phone "at times," (*Id.* at 987), the allegations here do not plausibly allege shared use where the phone belongs to another adult who stated that it is her only phone.[3] *See* Greene Decl. at ¶ 12, Ex. 10 at ¶ 12. The hypothetical cited approvingly in *Hall*, where a wife registered a shared landline

---

[3] Mr. Nelson has also filed cases based on messages sent to another number, presumably his own. Greene Decl. at ¶¶ 10-11, Exs. 8 at ¶ 9 & 9 at ¶ 12.

DEFENDANT SHUTTERFLY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER
3:26-CV-01900-AMO

phone in a home, similarly rests on the historically common circumstance that landline phones with one person as the subscriber are shared by all people in a household. *Hall*, 72 F.4th at 990 (citing *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 647 (4th Cir. 2019)). That rationale does not translate to modern mobile phones, and the collective allegations across the Nelsons' complaints foreclose any plausible claim of shared usage. At bottom, Plaintiff is suing over texts sent to his wife's phone and attempting to assert his wife's privacy injury (to the extent any injury exists at all).  He has suffered no injury of his own sufficient to confer standing and his Complaint should be dismissed with prejudice.

### C.    <u>The Complaint Should Be Dismissed Because Plaintiff Did Not Register the Number on the National Do-Not-Call Registry.</u>

Plaintiff did not himself register his number on the National Do-Not-Call Registry, and under the governing FCC regulation, this is fatal to his claim. The starting point and, when the text is unambiguous, the ending point of this Court's analysis is the language of the FCC's implementing regulation itself. The private right of action on which Plaintiff relies is 47 U.S.C. § 227(c)(5), which permits suit by "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." (*Id.*) The regulation allegedly violated here is 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." (*Id.*) Read together, the statute authorizes a private cause of action only where a plaintiff can establish a violation of the implementing regulation and the regulation defines the protected class with precision: a "residential telephone subscriber who has registered ***his or her*** telephone number" on the registry. (*Id.* (emphasis added)).

The regulation does not refer to a telephone number that "has been registered," but to a subscriber who "has registered his or her telephone number." That choice of phrasing reflects an intentional focus on the actor who affirmatively registered the number, not merely the fact that the number appears on the registry. As a result, the regulatory text does not protect all persons whose

telephone numbers happen to appear on the registry. Rather, it protects subscribers who have performed a specific, affirmative act: registration. The pronoun "his or her" is not surplusage. Instead, it ties the act of registration to the recipient bringing the claim. On this point, the Complaint's deficiency is clear. There is no allegation that Plaintiff added the number to the registry. Instead, the Complaint alleges that "Plaintiff's telephone number has been registered with the National Do Not Call Registry since November 13, 2024[,]" (Compl. ¶ 16), but that Plaintiff became the subscriber of the telephone number only "since June of 2025." (Compl. ¶ 9). Plaintiff thus affirmatively pleads that the number was registered by someone else. The Complaint therefore fails to state a claim.

As the court in *Rombough v. Robert D. Smith Ins. Agency, Inc.* held, "the plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry." No. 22-cv-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022). The *Rombough* court further observed that Section 64.1200(c) "does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the National Do-Not-Call Registry. The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else." (*Id.* at *2). The *Rombough* court found "no ambiguity in this language." (*Id.*)

The court in *Rogers v. Assurance IQ, LLC* reached the same conclusion, dismissing plaintiffs' do-not-call claims in part because they "chose to use the passive voice to allege that both Plaintiffs Rogers' and Thompson's phone numbers were 'registered on the National Do Not Call Registry,'" which left open the possibility that "the numbers could have been registered by previous owners of those numbers rather than by Plaintiffs themselves." *Rogers v. Assurance IQ, LLC*, No. 2:21-cv-00823, 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023). The court held that "[t]hese are facts that are easily within the knowledge of Plaintiffs and can be pleaded to remove any doubt about whether Plaintiffs Rogers and Thompson actually registered their own numbers on the DNC list[.]" (*Id.*)

A number of district courts, including in the Northern District of California, have reached a

contrary conclusion.[4] These non-binding decisions rested on three arguments, none of which support a result that is contrary to the plain language of the regulation.

*First*, these courts have read the requirement in 47 C.F.R. § 64.1200(c)(2) that "[s]uch do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator," to remove the personal-registration requirement and confer a private right of action on any person who happens to receive a phone number that a prior subscriber placed on the registry. *See, e.g.*, *Abrahamian v. loanDepot.com LLC*, No. 2:23-cv-00728-PHX-SMB, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024); *Nichols v. eHealthInsurance Servs. Inc.*, No. 23-cv-06720-EKL, 2025 WL 689721, at *2-3 (N.D. Cal. Mar. 3, 2025).

However, this argument conflates the duration of a registration with the identity of the person protected by it and, thus, should be rejected. The "honored indefinitely" clause speaks to how long a registration remains effective: once a number appears on the registry, the registration does not expire by the mere passage of time. But this temporal directive says nothing about who possesses a private right of action when the registered number changes hands. The regulation first defines who is protected (a subscriber "who has registered his or her telephone number") and then addresses how long the registration persists. 47 C.F.R. § 64.1200(c)(2). These are sequential, complementary provisions. Reading the "indefinitely" clause to nullify the personal-registration requirement renders the definitional language superfluous, contrary to ordinary principles of construction.

Moreover, the presence of a number on the registry does not establish that the current subscriber has any legally cognizable interest arising from that registration because the Federal Trade Commission ("FTC") is statutorily obligated to remove numbers from the registry when they are disconnected and reassigned, but systematically fails to do so for wireless numbers. Under 15

---

[4] *See, e.g.*, *Abrahamian v. loanDepot.com LLC*, No. 2:23-cv-00728-PHX-SMB, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024); *Nichols v. eHealthInsurance Servs. Inc.*, No. 23-cv-06720-EKL, 2025 WL 689721, at *2-3 (N.D. Cal. Mar. 3, 2025); *Binetti v. Colo. Tech. Univ.,* No. 6:25-cv-01049-AP, 2026 WL 812365, at *4 (D. Or. Jan. 21, 2026).

U.S.C. § 6155(b), "[t]he Federal Trade Commission shall periodically check telephone numbers registered on the national 'do-not-call' registry against national or other appropriate databases and shall remove from such registry those telephone numbers that have been disconnected and reassigned." In practice, however, the FTC's removal process identifies only numbers disconnected and reconnected to "a different account holder at a different address," and "ensures that numbers that have been ported are not removed."[5] Wireless numbers reassigned through standard carrier processes are not reliably captured by this process.[6] The mere presence of Plaintiff's telephone number on the registry is therefore no indication that Plaintiff made any affirmative choice to be protected from solicitations; it is simply a vestige of a prior, unknown subscriber's decision. The "honored indefinitely" language was designed to spare consumers who registered their own numbers the burden of periodic re-registration—not to create a windfall cause of action for subsequent subscribers who never took any step to invoke the statute's protections.

*Second*, courts have invoked the TCPA's remedial purpose in rejecting the requirement for personal registration. For example, the court in *Binetti v. Colo. Tech. Univ., Inc.*, concluded that "[i]n implementing the TCPA Congress sought to 'prohibit all unsolicited telemarketing calls to phone numbers in the NDNC Registry, without limitation as to who had registered the phone numbers.'" No. 6:25-cv-01049-AP, 2026 WL 812365, at *4 (D. Or. Jan. 21, 2026) (quoting *Nichols*, at *2).

The remedial-purpose argument fares no better. As the *Rombough* court recognized, a court "cannot liberally construe a statute when it finds the plain language is unambiguous." *Rombough*, 2022 WL 2713278, at *4. Because the language of Section 64.1200(c)(2) is unambiguous, there is no occasion to consult remedial-purpose canons or extratextual policy arguments. Even setting aside the plain text analysis, the personal-registration requirement remains consistent with the TCPA's underlying purpose. *See* 47 U.S.C. § 227. Registration is the mechanism by which a consumer

---

[5] *See* Greene Decl. ¶ 4, Ex. 2 (citing Fed. Trade Comm'n, *Biennial Report to Congress: Under the Do Not Call Registry Fee Extension Act of 2007*, 8 (Dec. 2025)).

[6] *See* Greene Decl. ¶ 5, Ex. 3 (citing Fed. Trade Comm'n, *Biennial Report to Congress*: *Under the Do Not Call Registry Fee Extension Act of 2007*, 4 (Dec. 2009)).

protects himself or herself under the umbrella of the statute. The TCPA's do-not-call provisions operate through an opt-in framework. *See, e.g.,* 47 U.S.C. § 227; 47 C.F.R. § 64.1200 (creating exceptions to delivery restrictions based, in part, on consumer opt-in). The private right of action associated with the FCC's do-not-call regulations thus flows from this act of registration and the expression of individual preference the TCPA was intended to honor. Congress could have broadly prohibited all unsolicited telemarketing calls regardless of registry status, but it did not. The FCC could have prohibited all solicitations to numbers on the registry, but it did not. A plaintiff who took no action to prevent such communications and whose phone number happened to be on the registry due to a third party's prior act cannot claim the protections afforded to the prior registrant. Permitting claims by plaintiffs who happened to receive a number registered on the National Do-Not-Call registry by a former user would convert the process of obtaining a new phone number into a lottery. Under such circumstances, a subscriber who did not register their phone number themselves can initiate a TCPA claim that would turn on the unrelated, unknowable decision of a prior owner of the phone number.

*Third*, the argument drawn from 47 U.S.C. § 227(c)(3)(F), advanced in *Nichols*, cannot overcome the regulation's clear text. The court in *Nichols* pointed to 47 U.S.C. § 227(c)(3)(F)'s directive that the FCC's "implementing regulations 'prohibit any person from making or transmitting a telephone solicitation *to the telephone number* of any subscriber included in such database'" as support for a broader reading of the statute, finding that "it appear[ed] Congress intended to prohibit calls to *phone numbers* in the NDNC Registry." 2025 WL 689721, at *2. However, that provision imposed a general obligation on the FCC to promulgate regulations protecting registrants; it did not itself define the contours of the private right of action or the class of persons entitled to enforce it. The FCC discharged that mandate by adopting 47 C.F.R. § 64.1200(c)(2), which limits the prohibition to solicitations made to "[a] residential telephone subscriber who has registered his or her telephone number" on the registry. It is this implementing regulation, not the statutory instruction to the agency addressed to a broader subject, that supplies the operative standard against which a plaintiff's claim must be measured, and it is the regulation that Plaintiff must satisfy to state a claim under § 227(c)(5). He cannot.

-12-

**D.**    **The Complaint Should Be Dismissed for Failure to State a Claim Because Texts Are Not Telephone Calls Under 47 U.S.C. § 227(c)(5).**

Plaintiff's cause of action under the TCPA must be dismissed pursuant to Rule 12(b)(6) because 47 U.S.C. § 227(c)(5) does not extend to text messages. By its plain terms, Section 227(c)(5) authorizes suit only by "[a] person who has received more than one telephone call within any 12-month period" in violation of FCC regulations implementing the TCPA. 47 U.S.C. § 227(c)(5). Plaintiff does not allege that Shutterfly placed any telephone call to him; the allegations relate only to text messages. Compl. ¶¶ 17–19. Because a text message is not a "telephone call" within the meaning of Section 227(c)(5), Plaintiff has failed to state a claim.

The ordinary meaning of "telephone call" at the time of the TCPA's enactment in 1991 was a voice-based communication—"the act of calling on the telephone," where "telephone" meant "an instrument for reproducing sounds at a distance." *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026) (quoting Merriam-Webster New Collegiate Dictionary (9th ed. 1990)). Text messaging, as a technology, did not exist in 1991; the first text message was not sent until December 1992. *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025). "Thus, a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." *James v. Smarter Contact, Inc.*, No. 8:25-cv-1657-KKM-SPF, 2026 WL 879244, at *3 (M.D. Fla. Mar. 31, 2026). "No ordinary person would think of a text message as a '*telephone* call'"—not in 1991 and not today. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). A contrary reading that any communication using a modern mobile phone is a "telephone call" yields absurd results, sweeping in video chats, app-based direct messages, and exchanges of photos, videos, and emojis that no one refers to as a telephone call.

The statute's structure confirms this reading. Congress used different terms throughout Section 227 to reflect different types of communications. In Section 227(b)(1)(A), Congress broadly prohibited making "any call" using specified technology. Likewise, in Section 227(a)(4), Congress defined "telephone solicitation" to include "the initiation of a telephone call or message," confirming that Congress knew how to reach messages when it wished to, 47 U.S.C. § 227(a)(4),

-13-

and that Congress understood a "telephone call" and a "message" are distinct. *See Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-cv-00242-LMM, 2026 WL 1098403, at *4 (N.D. Ga. Apr. 20, 2026) (quoting *Davis*, 797 F. Supp. 3d at 1274) (Section 227(a)(4) demonstrates that Congress "does not use the term 'telephone call' to encompass all 'messages'"); *see also Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093-JLS-BFM, 2025 WL 3549868, at *2 (C.D. Cal. 2025) (Section 227(a)(4)'s inclusion of "both 'a telephone call and message . . . suggests that messages are distinct from calls under the TCPA"). Yet, in Section 227(c)(5), Congress used only "telephone call"—deliberately omitting the broader language it used elsewhere. *See Davis*, 797 F. Supp. 3d at 1274 ("courts should presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters").

Congress's subsequent amendments reinforce this conclusion. In 2019, Congress amended Section 227(e) to address caller ID spoofing, expressly covering both "a call made using a voice service" and "a text message sent using a text messaging service," and separately defined "text message" as a category distinct from a telephone call. 47 U.S.C. § 227(e)(8)(A)-(C). Congress thus demonstrated that it understood the difference between "telephone calls" and "text messages"—yet it did not amend Section 227(c)(5) to include text messages.[7]

Plaintiff cannot salvage this deficiency by invoking the FCC's interpretation of the TCPA or prior Ninth Circuit decisions that treated text messages as "calls." Neither decision withstands scrutiny under *Loper Bright* and *McLaughlin*. As to the FCC, the Supreme Court has made clear that courts must exercise independent judgment in determining a statute's meaning under "the ordinary principles of statutory interpretation" and are not bound by agency interpretations that expand a statute beyond its text. *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 155 (2025); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402-03 (2024). Moreover, the

---

[7] Several state legislatures recognized this gap and expressly amended their own statutes to cover text messages—further confirming that "telephone call" does not include texts under the TCPA without such express amendment. *See, e.g.*, 2019 N.C. Sess. Laws 188 (H.B. 724) (codified at N.C. Gen. Stat. § 75-101) (amending "telephone solicitation" and "unsolicited telephone call" to include "voice or text communication"); Fla. Stat. § 501.059(1)(j) (amending "telephonic sales call" to include text messages).

FCC's treatment of texts as "calls" under Section 227(c) was cursory and made in passing and based on the FCC's more thorough analysis of the different language in Section 227(b). *See, e.g.*, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 Fed. Reg. 44,144, 44,166 (July 25, 2003); *Targeting & Eliminating Unlawful Text Messages*, 89 Fed. Reg. 5,098, 5,101 (Jan. 26, 2024); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025) (notice of appeal filed) ("[T]he FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5)."). Post-*McLaughlin*, this Court must independently construe the statute's plain text and cannot expand the private right of action beyond what Congress enacted. *See, e.g.*, *Stockdale*, 2026 WL 591842, at *3.

As to Ninth Circuit precedent, neither *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026), nor *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), controls this case. Both decisions interpreted the term "call" as used in Section 227(b)(1), which broadly prohibits making "any call" using specified technology—a distinct provision with distinct language from the "telephone call" requirement in Section 227(c)(5). *Satterfield* held that a text message is a "call" within the meaning of Section 227(b)(1)(A) because it constitutes "an attempt to communicate by telephone." 569 F.3d at 953 n.3. *Howard* reaffirmed that holding. 164 F.4th at 1123–24. But neither case addressed whether a text message constitutes a "telephone call" under Section 227(c)(5)—a compound noun with a narrower, fixed meaning tied to voice-based communication. As the *James* court explained, decisions treating texts as "calls" under the TCPA "improperly use[] definitions of the verb form of 'call,'" but in "Section 227(c)(5), 'call' is used as a noun" modified by "telephone," which "clarifies the understanding of the much broader 'call.'" 2026 WL 879244, at *7-10. Because the Ninth Circuit has not addressed whether "telephone call" in Section 227(c)(5) encompasses text messages, *Howard* and *Satterfield* do not foreclose Shutterfly's argument.

Several courts in this district and elsewhere within the Ninth Circuit have concluded, applying *Satterfield*, that text messages qualify as "telephone calls" under § 227(c)(5). *See, e.g., Esquivel v. Mona Lee, Inc.*, No. 3:25-cv-00607-H-BLM, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025); *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996-BLF, 2025 WL 2856295, at *2–4 (N.D.

-15-

Cal. Oct. 7, 2025). These decisions do not withstand scrutiny under *Loper Bright* and *McLaughlin*.

The court in *Esquivel* performed no independent textual analysis. Instead, it relied on *Satterfield* and pre-*McLaughlin* FCC guidance to conclude, without engaging the statutory text of § 227(c)(5), that text messages constitute "telephone calls." *Esquivel*, 2025 WL 3275607, at *2–3. But *McLaughlin* requires courts to interpret § 227(c)(5) through "ordinary principles of statutory interpretation" rather than by relying on FCC guidance or precedents that themselves depended on agency deference. 606 U.S. at 155. *Esquivel* does not do so.

*Wilson* fares no better. Its textual analysis is fatally flawed: the court anchored its reading of "call" to a 2024 edition of Black's Law Dictionary. *Wilson*, 2025 WL 2856295, at *2. That methodology directly contravenes *Loper Bright*'s instruction that "every statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Courts applying the correct temporal frame have reached the opposite conclusion. *See Stockdale*, 2026 WL 591842, at *3 (relying on 1990 Merriam-Webster definition of "telephone" as "an instrument for reproducing sounds at a distance" to conclude that text messages fall outside the plain meaning of "telephone call"); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811, 2026 WL 456919, at *4–5 (N.D. Ga. Feb. 17, 2026) (expressly criticizing *Wilson* for "reach[ing] beyond the statute's plain text" and "def[ying] both the first rule of statutory interpretation and *Loper Bright*'s instruction that a statute's meaning is fixed at the time of enactment").

Notably, even the district court in this Circuit that most recently denied a motion to dismiss on this ground acknowledged that the plain meaning of "telephone call" excludes text messages. *Dilanyan*, 2025 WL 3549868, at *2 (concluding that the court "reads the ordinary meaning of 'telephone call' to exclude 'text message'" and that "text messaging did not exist" when the TCPA was enacted). The *Dilanyan* court declined to dismiss solely on the ground that *Satterfield*'s broad statement that "a text message is a 'call' within the meaning of the TCPA" was not "clearly irreconcilable" with *Loper Bright* and therefore remained binding. *Id*. at *3. But as explained above, *Satterfield* addressed the distinct term "any call" in § 227(b)(1)(A)—not the compound noun "telephone call" in § 227(c)(5)—a distinction the *Dilanyan* court did not address. The Ninth Circuit has not reexamined *Satterfield* in light of *Loper Bright* and *McLaughlin* as applied to § 227(c)(5)

-16-

specifically. This Court should do so now.

Nearly a dozen courts have now reached the conclusion that text messages are not telephone calls and dismissed Section 227(c)(5) claims based on text messages. *See, e.g.*, *Stockdale*, 2026 WL 591842; *Radvansky*, 2026 WL 456919; *Richards v. Fashion Nova, LLC*, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026); *James*, 2026 WL 879244; *Davis*, 797 F. Supp. 3d 1270; *Jones*, 792 F. Supp. 3d 894; *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00846-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025). The reasoning across these decisions is consistent and grounded in the statute's text, structure, and history. Whatever policy arguments might favor extending Section 227(c)(5) to text messages, "it is for Congress to correct—not the courts." *Stockdale*, 2026 WL 591842, at *4 n.7. Plaintiff's claim should be dismissed with prejudice.

### E.      If The Case Is Not Dismissed, It Should Be Transferred to The Eastern District of Michigan.

If the Court declines to dismiss, it should transfer this action to the Eastern District of Michigan—where Plaintiff lives, where his wife lives, where the phone number originates, and where at least five of the Nelsons' related TCPA cases are already pending.

#### 1.      The Case Could Have Been Brought in The Eastern District of Michigan.

A case "might have been brought" in the transferee court where "subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought." *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) (internal quotation and citation omitted). Each requirement is satisfied here.

The Eastern District of Michigan has subject matter jurisdiction over this action because it is a federal claim under the TCPA. (Compl. ¶ 5)

Specific personal jurisdiction exists where the pleadings establish that the defendant "sent text messages directly to cell phones with [forum-state] based area codes, which conduct allegedly violated the TCPA and gave rise to the action" because, by and through the alleged conduct, the defendant "aimed its conduct" at the forum. *See, e.g.*, *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014); *Baker v. Caribbean Cruise Line, Inc.*, No. CV

13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014); *Moser v. Health Ins. Innovations, Inc.*, 2018 WL 325112, at *4 (S.D. Cal. Jan. 5, 2018). Here, the Eastern District of Michigan has personal jurisdiction because the Complaint alleges that Shutterfly "delivered, or caused to be delivered, text messages to telephone number (517) 769-XXXX in August, November and December of 2025." (Compl. ¶ 17.) The telephone number at issue contains a 517 area code, which represents a Michigan-based telephone number. Greene Decl. at ¶ 3, Ex. 1.

Finally, venue is proper in the Eastern District of Michigan for the same reason. *See, e.g., Neff v. Towbin Dodge LLC*, No. 2:20-cv-00261-JAM-DMC, 2020 WL 6802188, at *2 (E.D. Cal. Nov. 19, 2020) ("Courts in TCPA cases have consistently found venue to be proper under § 1391(b)(2) where the call was received.").

## 2. Transfer to the Eastern District of Michigan Would Advance Convenience and the Interest of Justice.

The second prong of the Section 1404(a) analysis is also satisfied. In evaluating this prong, the transferor court considers: (1) plaintiffs' choice of forum, (2) convenience of the parties and witnesses, (3) ease of access to the evidence, (4) familiarity of each forum with the law, (5) feasibility of consolidation with other claims, (6) any local interest in the controversy, and (7) the relative court congestion and time of trial. *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). Here, the interests of justice weigh strongly in favor of transfer. Most critically, transfer will conserve judicial resources by allowing common factual questions related to the Nelsons to be decided once and consistently in their home district in Michigan.

### a. Convenience of the Parties and Witnesses and Access to Evidence Weigh in Favor of Transfer.

There is no question that the Eastern District of Michigan is the more convenient forum for the Nelsons. They live and have filed five other TCPA cases there. *See* Greene Decl. at ¶¶ 6-7, 9, 12-13, Exs. 4-5, 7, 12-13. The complaint in the first-filed case—*Nelson v. Adwora LLC*, No. 2:26-cv-10423 (E.D. Mich. Feb. 6, 2026)—confirms that Plaintiff Justin Nelson is a resident of the Eastern District of Michigan. *See id.* at ¶ 6, Ex. 4 at ¶ 6. Michele Nelson's complaints in *Capital Vision Services* and *L J Ross Associates* similarly confirm that she is a resident of the Eastern District

of Michigan. *See id.* at ¶ 12-13, Exs. 10 at ¶ 6 & 11 at ¶ 9.

The Nelsons have no apparent or pled connection to California or the Northern District. And although Shutterfly is headquartered in California, the person who oversees their message-based marketing works in Chicago, and her team is not based in the Northern District of California. Broker Decl. ¶ 13. The company's relevant business records, including its principal records related to marketing and communications, are stored digitally and not maintained in physical format. Broker Decl. at ¶ 14.  The Eastern District of Michigan is therefore the more convenient forum for the parties and witnesses.

### b.    Plaintiff's Choice of Forum Is of Little or No Consideration.

Although a plaintiff's choice of forum is ordinarily given weight, this factor is not significant in cases where a plaintiff seeks to represent a national class. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum, … when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."). The reduced weight on plaintiff's choice of forum is heightened where there is evidence of forum-shopping and, in those cases, "courts should disregard plaintiff's choice of forum." *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007). Here, Plaintiff seeks to represent a national class, and the Nelsons' pattern of complaints strongly suggests they are engaged in forum shopping. *See* Section II, *supra*.

### c.    Judicial Efficiency, Familiarity of Each Forum with the Applicable Law, and Local Interests in the Matter All Weigh in Favor of Transfer.

The strongest factor supporting transfer is judicial efficiency. The Nelsons' complaints raise numerous identical threshold factual issues for their TCPA claims that are specific to them as individuals. This includes issues relating to their status as subscribers and whether the phone number at issue has been used for business purposes, which would defeat their claim. *See* Greene Decl. at ¶¶ 14-15, Ex. 12-13. For example, the Complaint alleges that "Plaintiff has never had this cell number associated with a business." (Compl. ¶ 14.) This appears to be another sleight-of-hand, as Mrs. Nelson, to whom the phone actually belongs, has listed the number as the business number of

a nonprofit organization of which she is President. Greene Decl. at ¶¶ 14-16, Ex.12-14. These are issues for another day if the case proceeds, but there is no reason why multiple federal district courts should take the time to adjudicate these common factual issues of no public concern and in doing so risk inconsistent findings. Transferring this case to the Eastern District of Michigan could allow the Nelsons' cases to be consolidated or at least assigned to the same judge. This factor strongly supports transfer. *See, e.g., Cardoza v. T-Mobile USA, Inc.*, No. 08-5120 SC, 2009 WL 723843, at *5 (N.D. Cal. Mar. 18, 2009) ("permitting cases "'involving precisely the same issues'" to proceed "'in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent'") (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)); *Garcia v. 3M Co.*, No. C-09-01943 RMW, 2009 U.S. Dist. LEXIS 112247, at *14 (N.D. Cal. Nov. 13, 2009) (holding that, even absent consolidation with a case pending in the transferee court, consideration of the "practicalities of making the trials easy, expeditious and economical" weighed in favor of transfer).

For all other issues, the Eastern District of Michigan is equally equipped as this Court to dispose of the case efficiently. *See Oliver v. Lyft, Inc.*, No. C 19-01488 WHA, 2019 WL 2342263, at *4 (N.D. Cal. June 3, 2019) (granting motion to transfer venue in TCPA case, finding both forums "equally familiar with the law"); *Kempton v. Life for Relief & Dev. Inc.*, No. CV-19-02156-PHX-DJH, 2019 WL 5188750, at *4 (D. Ariz. Oct. 15, 2019) (same). To the extent either court has a local interest in the case, that interest is greater in Michigan.

## V.    CONCLUSION

Shutterfly respectfully requests that the Court dismiss the Complaint with prejudice or, in the alternative, transfer this action to the Eastern District of Michigan.

DEFENDANT SHUTTERFLY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER
3:26-CV-01900-AMO

DATED: May 6, 2026                          **DLA PIPER LLP (US)**

By: */s/ Tanya L. Greene*
　　TANYA L. GREENE
　　JOHN P. FRANTZ*
　　DAVID B. FARKAS
　　CARLO F. BUSTILLOS

　　*Attorneys for Defendant*
　　*SHUTTERFLY, LLC*

　　*\*Pro hac vice forthcoming*

DEFENDANT SHUTTERFLY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER
3:26-CV-01900-AMO

## CERTIFICATION RE ARTIFICIAL INTELLIGENCE

Pursuant to the Court's Standing Order regarding the use of artificial intelligence, the undersigned certifies that (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw and LexisNexis; (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

DATED: May 6, 2026                    **DLA PIPER LLP (US)**

                                      By: */s/ Tanya L. Greene*
                                          TANYA L. GREENE
                                          JOHN P. FRANTZ*
                                          DAVID B. FARKAS
                                          CARLO F. BUSTILLOS

                                          *Attorneys for Defendant*
                                          *SHUTTERFLY, LLC*

                                          *Pro hac vice forthcoming*