# Exhibit 3



# Biennial Report to Congress

## Pursuant to the Do Not Call Registry Fee Extension Act of 2007

Federal Trade Commission
December 2009

**Do-Not-Call Registry Fee Extension Act of 2007**

**Report to Congress**

## I.    Report Overview

This Report provides an overview of key developments in the operation of the National Do Not Call Registry ("National Registry" or "Registry").  In February 2008, Congress passed the Do-Not-Call Improvement Act of 2007 ("DNCIA"),[1] making registrations permanent, which provided a substantial benefit to consumers.  The National Registry, which continues to provide consumers with an effective means to limit unwanted telemarketing calls, now has over 191 million active registrations.

During fiscal year ("FY") 2009, over 18 million new registrations were received, and approximately 45,000 sellers, telemarketers, and exempt organizations subscribed to access the National Registry.  Close to 4,000 of those entities paid fees totaling more than $15.5 million.  In addition, the Federal Trade Commission ("FTC"), in conjunction with the primary contractor in charge of the Registry and the subcontractor responsible for identifying numbers on the Registry that should be removed, implemented a new procedure for tracking disconnected and reassigned phone numbers.  This new procedure addresses problems that may arise as a result of new telecommunications technologies or of the increased ease of porting telephone numbers from one telephone service provider to another.

## II.    Introduction

The National Registry, which has been in operation since the summer of 2003, continues to grow at a remarkable rate.  As telecommunications technology has developed, the FTC has worked to ensure that the Registry is able to accommodate an increasing volume of registrations and that the procedures used to maintain the accuracy of the Registry include measures for addressing the challenges that new technologies may present.

The Do-Not-Call Registry Fee Extension Act of 2007 ("Fee Extension Act"),[2] signed into law on February 15, 2008, mandates that not later than December 31, 2009, and biennially thereafter, the FTC, in consultation with the Federal Communications Commission ("FCC"), transmit to Congress a report on the National Registry.  Specifically, the Fee Extension Act requires that the FTC's biennial report provide the following information:

1)    the number of consumers who have placed their telephone number on the Registry;

2)    the number of persons paying fees for access to the Registry and the amount of such fees;

3)    the impact on the Do Not Call Registry of
    a)    the five-year re-registration requirement;

b) new telecommunications technology; and

c) number portability and abandoned telephone numbers; and

4) the impact of the established business relationship exception on businesses and consumers.

This Biennial Report from the FTC provides an overview of the operation of the National Registry through the end of FY 2009.

## III.    Operation of the National Registry

On January 29, 2003, the FTC issued the final amendments to the Telemarketing Sales Rule ("Amended TSR") that, *inter alia*, established the National Do Not Call Registry.[3]  The Registry permits consumers to express their preferences not to receive certain telemarketing calls by placing their phone number(s) on a national registry by either calling a toll-free number from the telephone number(s) they wish to register, or using the do-not-call website (http://www.ftc.gov/donotcall).  The process is fully automated, takes only a few minutes, and requires consumers to provide minimal personally identifiable information.[4]

Consumers also have the ability to verify their registration status and to remove their number(s) from the Registry.  As is the case for registering a phone number, verifying a registration can be done either over the phone, by calling the toll-free number from the registered telephone number, or over the Internet.  However, to delete a registered phone number from the Registry, consumers must call from the number that they want to remove.  Not allowing deletions to be done online helps maintain the accuracy of the Registry by ensuring that a consumer's phone number is not removed without the consumer's consent.[5]

Sellers and telemarketers have to update their call lists–that is, delete all numbers in the National Registry from their lists–at least every 31 days.  Entities that make outbound telephone calls to consumers can access the Registry numbers and pay the appropriate fee, if any, for that access through an Internet website dedicated to that purpose.  The only information about consumers that the companies receive from the National Registry is the registered telephone numbers.  Those numbers are sorted and available for download by area code.  Companies also may check a small number of telephone numbers at a time via interactive Internet pages.

Consumers who receive unwanted telemarketing calls can register a complaint with either the FTC or the FCC.  Consumers can submit complaints to the FTC via a toll-free telephone number, using an interactive voice response system, or via the Internet.  Since September 1, 2009, the system has accepted complaints not only from consumers whose numbers are registered, but also from consumers whose numbers are not registered but whose complaints are about robocalls, *i.e.*, calls delivering a prerecorded message.[6]  Law enforcement officials can review these complaints, as well as other data in the National Registry, including consumer registration information and telemarketer access information.  Access to Registry data is provided to the law enforcement community through the Consumer Sentinel Network, a secure Internet website maintained by the FTC.[7]  Like the FTC, the FCC accepts complaints by

telephone.  In addition, consumers can register complaints with the FCC by submitting dedicated complaint forms concerning alleged do-not-call and prerecorded telemarketing violations via either the Internet or mail.

## IV.    Number of Consumers Who Placed Their Telephone Numbers on the National Registry as of the End of FY 2009

Americans continue to enthusiastically embrace the National Registry.  In the first four days following the launch of the Registry on June 27, 2003, more than 10 million numbers were registered.  As of September 30, 2003, a total of 51,968,777 telephone numbers had been registered.  With each fiscal year, the number has steadily increased.  By the end of FY 2008, the number of active registrations was 172,523,062.  As of September 30, 2009, the National Registry had 191,453,311 active registrations.[8]

## V.    Number of Entities Paying Fees for Access to the National Registry During FY 2009

In FY 2009, a total of 3,924 entities paid fees totaling $15,693,667 for access to the National Registry.[9]  In addition, certain entities can access data from the National Registry without having to pay a fee.  These include entities that access five or fewer area codes of data in a year, as well as exempt organizations (such as charitable organizations) that are not required to access the National Registry to comply with do-not-call requirements under federal law, but voluntarily access the National Registry to avoid calling consumers who do not wish to receive calls.[10]  In FY 2009, 40,406 entities subscribed to access five or fewer area codes at no charge, and 1,002 entities claiming "exempt organization" status obtained free access.

## VI.    Impact on the National Registry of the Five-Year Re-Registration Requirement, New Telecommunications Technology, and Number Portability and Abandoned Telephone Numbers

At the same time as Congress passed the Fee Extension Act, it enacted the DNCIA.  The DNCIA mandates that the FTC "periodically check telephone numbers registered on the national 'do-not-call' registry against national or other appropriate databases and [remove] from such registry those telephone numbers that have been disconnected and reassigned."[11]

In accordance with the Fee Extension Act, the following sections of this Report outline the impact on the National Registry of the five-year re-registration requirement, new telecommunications technology, and number portability and abandoned telephone numbers. This Report focuses on the impact of these factors on the accuracy of the Registry.[12]

### Five-Year Re-Registration Requirement

When the National Registry was first implemented in 2003, registrations were scheduled to expire after five years.  Out of concern that the expiration of numbers on the Registry would be detrimental to consumers, the FTC, in the fall of 2007, pledged not to drop any numbers from

3

the Registry, pending final Congressional action.[13]  The following February, Congress passed the DNCIA, eliminating the automatic removal of numbers from the Registry.

As the FTC stated in its testimony to Congress in 2007, the FTC's goal is to "balance the need to maintain a high level of accuracy in the Registry, with the imposition on consumers to periodically re-register their telephone numbers."[14]  The FTC believed that removing the re-registration requirement would not affect the accuracy of the Registry partly because of the increased ease with which consumers could port (*i.e.*, transfer) their phone numbers from one telephone service provider to another.[15]  After Congress eliminated the five-year re-registration requirement, the FTC implemented new procedures for identifying numbers that should be removed from the Registry; and as the Report to Congress issued last fall discusses, these procedures address the situations that could threaten the Registry's accuracy.[16]

The FTC continues to believe that eliminating the re-registration requirement has not decreased the accuracy of the Registry, but that it **has** enabled consumers to maintain their right to privacy without interruption and made it possible to avoid the cost associated with educating consumers about the need to re-register.  At the time the DNCIA was passed, no registrations had yet expired, since the first registrations were made in late June 2003, less than five years preceding February 2008.  Consequently, no consumers ever had to re-register their numbers.

### New Telecommunications Technology

Although developments in telecommunications technology have the potential to impact the accuracy of the Registry, the FTC has developed procedures for maintaining the integrity of the Registry while ensuring that the protections it offers continue regardless of the advances in technology.  Since the Registry's implementation in 2003, two forms of telecommunications technology  have advanced considerably:  cell phones and Voice over Internet Protocol ("VoIP").[17]  In June 2009, CTIA: The Wireless Association reported that there were over 276 million wireless subscribers,[18] and in 2006, the Telecommunications Industry Association estimated that by 2009, there would be 18 million residential VoIP customers.[19]

The Registry has always accepted cell phone numbers, although most telemarketing calls would be illegal if made to cell phones, regardless of whether the number is on the Registry.  The FCC prohibits use of automatic dialing systems to place calls to wireless devices without the consumer's consent,[20] and most telemarketers use automatic dialing systems for efficiency.  Nevertheless, many consumers still opt to register their cell phone numbers.

The subcontractor that oversees the process for removing numbers from the Registry uses directory assistance databases to compile information about disconnected and reassigned phone numbers.  Unlike land-line service providers, wireless service providers are not currently required to comply with FCC rules mandating that carriers share their directory assistance data.[21]  However, the subcontractor is attempting to work with wireless service providers individually to compile data regarding disconnected and reassigned wireless phone numbers so that they can be removed from the Registry.

VoIP service providers are also not required to share their directory assistance data. However, the subcontractor estimates that the national directory assistance data that it compiles contain approximately 75% of the VoIP numbers; thus, disconnection and reassignment information on a majority of VoIP numbers is included in the analysis used to determine what numbers should be removed from the Registry.

### Number Portability and Abandoned Telephone Numbers

Like new technologies, issues pertaining to number portability and abandoned telephone numbers were taken into consideration when the procedure for identifying numbers that need to be removed from the Registry was designed. To increase the likelihood that ported numbers are not removed but abandoned numbers are, the subcontractor must first identify the numbers in the compiled disconnection and reassignment data that have been designated new connections.

Then, by comparing the data provided for a newly connected number with historical data about that same number, the subcontractor can determine if the new connection was to a different account holder. A number is designated as disconnected and reassigned for purposes of removing it from the Registry only if neither the name nor the address for the new account match the name or address associated with the previous account for that number. For example, if the account holder name is the same but the address is different, then the number is not removed, because the new connection is clearly the result of number portability.

Conversely, if the account holder name for that number is different but the address is the same, then, again, the number is not removed. These situations are usually the result of billing issues or of an account being transferred from one household member to another. As stated in the Statement of Basis and Purpose for the Amended TSR, the FTC believes that, because numerous people in a household often share a common telephone number, the decision to be part of the Registry does not rest with the line subscriber (or any single resident) alone. In such a shared-number situation, the privacy rights of all are affected by unwanted telemarketing calls. Thus, the decision to register the household telephone number in the National Registry is a joint decision of all household members. The FTC's telephone registration system accepts the registration from any member of the household, but does remind consumers that they are registering on behalf of all household members.[22]

Consequently, the only numbers removed from the National Registry are those that have been disconnected (or abandoned) and then reconnected to a different account holder at a different address. This process, which is performed monthly, ensures that numbers that have been ported are not removed, but numbers that have truly been abandoned are deleted.

## VII.   Impact of Established Business Relationship Exception on Consumers and Businesses

The Amended TSR and the FCC rules contain exemptions that permit a seller or telemarketer to call a person who has listed his or her telephone numbers on the Registry if the call is to a person with whom the seller has an "established business relationship."[23]   An

established business relationship under the Amended TSR and the FCC rules is a relationship based on (i) the consumer's purchase, rental, or lease of the seller's goods or services, or a financial transaction between the consumer and seller, within 18 months preceding a telemarketing call; or (ii) a consumer's inquiry or application regarding a seller's goods or services within three months immediately preceding the telemarketing call.[24]  This exception allows sellers and their telemarketers to call customers who have recently made purchases or made payments, and to return calls to prospective customers who have made inquiries, even if their telephone numbers are on the National Registry.

Many businesses rely on this exemption to conduct telemarketing campaigns directed at recent or long-time customers, or consumers who have expressed an interest in becoming customers.  Many consumers, however, perceive telemarketing calls that fall within this exemption to be inconsistent with the Registry because the consumers are unaware of the exception or are not aware that they have a relationship with the seller that falls within the definition of an established business relationship.

Such perceptions by consumers are especially likely when the relationship between the consumer and the seller arises from a brief, one time transaction, or when the seller identified in the telemarketing call and the seller with whom the consumer has a relationship are part of the same legal entity, but are perceived by consumers to be different because they use different names or are marketing different products.  Both the FTC and the FCC have stated that the issue of whether calls by or on behalf of sellers who are affiliates and subsidiaries of an entity with which a consumer has an established business relationship fall within the exception depends on consumer expectations.  The FTC has characterized the issue as: "would consumers likely be surprised by that call and find it inconsistent with having placed their telephone number on the national 'do-not-call' registry?"[25]

For both the FTC and the FCC, the factors to be considered in this analysis include whether the subsidiary's or affiliate's goods or services are similar to the seller's, and whether the subsidiary's or affiliate's name is identical or similar to the seller's name.  The greater the similarity between the nature and type of goods or services sold by the seller and any subsidiary or affiliate and the greater the similarity in identity between the seller and any subsidiary or affiliate, the more likely it is that the call will fall within the established business relationship exemption.[26]

Some businesses, seeking to circumvent the Registry, have sought to exploit the established business relationship exemption by making calls to persons who have not had the requisite contact with the seller.  For example, some marketers claiming a business relationship have improperly placed telemarketing calls to consumers after acquiring the consumers' telephone numbers from others.  So called "lead generators" collect information on consumer interests through web advertising, or by offering coupons or samples.  Some telemarketers and sellers have acquired leads collected in this manner and have used them to conduct telemarketing campaigns without screening the lists to avoid calling consumers who have listed their numbers on the Registry.

6

Such telephone calls generally do not fall within the established business relationship exception because, while the consumers may have a relationship with the lead generator, they do not have an established business relationship with the seller who has purchased the leads. Unless the consumer inquired into the services of a specified seller, or the lead generator has made disclosures that would alert the consumer that he or she should expect telemarketing calls from the seller as a result of his or her communications with the lead generator, the seller cannot claim that it has a relationship with the consumer that should allow it to ignore the consumer's request that telemarketers not call. In several enforcement actions, businesses that made telephone calls to consumers on the Registry after acquiring the consumers' names from a lead generator agreed to pay civil penalties to settle charges that their calls violated the Amended TSR.[27]

## VIII.  Conclusion

Since its inception, the National Registry has successfully accepted consumer registrations and complaints, allowed businesses to obtain access to Registry data, and provided law enforcement with the tools and information that they need to investigate complaints and bring enforcement actions. During FY 2009, the National Registry managed large volumes of consumer registrations, and, as of the end of the fiscal year, more than 191 million telephone numbers were on the Registry. FTC staff continues to work closely with the contractor overseeing the Registry to ensure that the integrity of the Registry is maintained and that consumers' preferences not to receive telemarketing calls are honored.

**Endnotes:**

1.      Pub. L. No. 110-187, 122 Stat. 633 (2008).

2.      Pub. L. No. 110-188, 122 Stat. 635 (2008).

3.      16 C.F.R. Part 310.

4.      In the case of registration by telephone, the only personal information provided is the telephone number to be registered.  In the case of Internet registration, a consumer must provide, in addition to the telephone number(s) to be registered, a valid email address to which a confirmation email message can be sent.  Once the confirmation is complete, however, the email address is encrypted and no longer usable.

5.      In addition, phone numbers that have been disconnected and reassigned to new consumers at different addresses are removed from the Registry through a process the FTC monitors.

6.      The Telemarketing Sales Rule amendment prohibiting robocalls went into effect on September 1, 2009.  *See* Telemarketing Sales Rule Final Rule Amendments, 73 Fed. Reg. 51164 (Aug. 29, 2008), at http://www.ftc.gov/os/fedreg/2008/august/080829tsr.pdf.

7.      In addition to storing National Registry complaints and registry information, the Consumer Sentinel Network contains millions of consumer complaints, including fraud and identity theft complaints, that can be accessed by law enforcement officials on their computers over a secure Internet connection.

8.      These totals exclude those telephone numbers that have been deleted by consumers or eliminated as part of the FTC's removal process.  A telephone number that was registered more than once between FY 2003 - FY 2009 is counted only once in these totals.

9.      As established by the Fee Extension Act, in FY 2009, the annual fee per area code was $54 (with the first five area codes provided at no cost) with the maximum annual fee for accessing the entire National Registry being $14,850.

10.     Such "exempt" organizations include entities that engage in outbound telephone calls to consumers that do not involve the sale of goods or services, such as calls to induce charitable contributions, to raise funds for political purposes, or to conduct surveys.  They also include entities who are engaged solely in calls to persons with whom they have an established business relationship or from whom they have obtained express written agreement to call, pursuant to the Amended TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B)(i) or (ii), and who do not access the National Registry for any other purpose.

11.     *See supra* note 1.

12.     For additional information regarding the procedure used to maintain the accuracy of the Registry, please see the "Do-Not-Call Improvement Act of 2007 Report to Congress: Regarding the Accuracy of the Do Not Call Registry" at http://www.ftc.gov/os/2008/11/P034305dncreport.pdf.

13.     *See* FTC Press Release at http://www.ftc.gov/opa/2007/10/dnctestimony.shtm.

14.     *See* FTC Testimony at http://www.ftc.gov/os/testimony/071023ReDoNotCallRuleEnforcementHouseP034412.pdf.

15.     Under FCC local number portability rules, consumers are able to keep their phone numbers when switching telephone service providers so long as the consumer is staying within the same geographic area.  *See* http://www.fcc.gov/cgb/consumerfacts/numbport.html and http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-09-41A1.pdf.

16.     *See supra* note 12.

17.     For purposes of this Report, these two now well-entrenched forms of telecommunication are being considered as "new."

18.     *See* CTIA's Semi-Annual Wireless Industry Survey Results at http://files.ctia.org/pdf/CTIA_Survey_Midyear_2009_Graphics.pdf.

19.     *See* http://tiaonline.org/news_events/press_room/press_releases/2006/PR06-19.cfm.

20.     47 U.S.C. § 227(b)(1)(A)(iii) (2005).

21.     47 C.F.R. Part 51.217(c)(3).

22.     *See* Statement of Basis and Purpose for Final Amended Telemarketing Sales Rule, 68 Fed. Reg. 4580, 4639 (Jan. 29, 2003).

23.     16 C.F.R. § 310.4(b)(1)(iii)(B) and § 310.2(n).  The FCC's rules similarly include an exemption for calls to consumers with whom the seller has an established business relationship.  *See* 47 C.F.R. § 64.1200(c)(2) and § 64.1200(f)(12)(ii).  These exemptions do not apply if the person has asked to be on the seller's "entity-specific" do-not-call list by telling the seller or its representatives that he or she does not wish to receive telemarketing calls from the seller.

24.     *See United States v. Columbia House Co.*, Civ. No. 05C-4064 (N.D. Ill. filed July 14, 2005).  In this case, the company agreed to a settlement after the FTC's analysis found that its telemarketers continued to call former customers after the 18-month period provided by the established business relationship exemption had expired.

25.     68 Fed. Reg. at 4594.  *See also* 47 C.F.R. § 64.1200(f)(4)(ii) (under FCC's rules, a consumer's "established business relationship with a particular business entity does not extend to affiliated entities unless the [consumer] would reasonably expect them to be included").

9

26.     *See* Complying with the Telemarketing Sales Rule, at http://www.ftc.gov/bcp/edu/pubs/ business/marketing/bus27.shtm.  Similarly, the FCC has stated that "affiliates fall within the established business relationship exemption only if the consumer would reasonably expect them to be included given the nature and type of goods or services offered and the identity of the affiliate."  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 18 FCC Rcd 14014, 14082-83, para. 117 (2003).

27.     *See United States v. Central Florida Investments, Inc.*, Civ. No. 6:09-cv-00104-PCF-GJK (M.D Fla. filed  Jan. 15, 2009); *United States v. Ameriquest Mortgage Company*, Civ. No. 8:07-cv-01304-CJC-MLG (C.D. Cal. filed  Nov. 6, 2007).

**1-888-382-1222**
donotcall.gov