Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

Attorney for Plaintiff and Putative Class

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN NELSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>SHUTTERFLY, LLC<br><br>*Defendant.* | Case No. 4:26-cv-01900-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT SHUTTERFLY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER** |

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 5

BACKGROUND ......................................................................................................... 6

LEGAL STANDARD ................................................................................................. 6

ARGUMENT .............................................................................................................. 7

I. THE NINTH CIRCUIT COURT OF APPEALS HAS REPEATEDLY MADE CLEAR THAT TEXT MESSAGES ARE CALLS UNDER THE TCPA, AND IT DID SO AGAIN EARLIER THIS YEAR ................................................................................................................ 7

A. Earlier This Year, the Ninth Circuit Unequivocally Stated that a "Text Message" Constitutes a "Call" Within the Meaning of the TCPA ......................................................... 9

B. Section 227(c) Authorizes the FCC to Prohibit Unwanted Telephone Solicitations of All Kinds, Including Text Message Calls ........................................................................ 12

C. The Plain Meaning of the Word "Call" Includes Text Messages ............................. 14

II. THE PLAINTIFF IS THE SUBSCRIBER OF THE TELEPHONE LINE THAT RECEIVED THE TEXT MESSAGES. AS SUCH, HE HAS STANDING TO PURSUE HIS TCPA CLAIM ...................................................................................................................... 16

III. THERE IS NO REQUIREMENT THAT THE PLAINTIFF HAVE PERSONALLY REGISTERED THE TELEPHONE NUMBER ON THE DO NOT CALL REGISTRY. IF THERE WAS, MILLIONS OF AMERICANS WOULD NOT BE ABLE TO UTILIZE THE BENEFITS OF THE DO NOT CALL REGISTRY .............................................................. 19

IV. THE COURT SHOULD DENY DEFENDANT'S MOTION TO TRANSFER VENUE AWAY FROM THE DEFENDANT'S HEADQUARTERS WHERE THE PLAINTIFF SELECTED TO FILE ............................................................................................... 23

CONCLUSION ...........................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Abrahamian v. loanDepot.com LLC*, 2024 WL 1092442 (D. Ariz. Mar. 13, 2024) .................. 17

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union*, 708 F.3d 737 (6th Cir. 2013) ........................ 11

*Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980 (N.D. Cal. 2011) ................................ 21

*Binetti v. Colo. Tech. Univ., Inc.*, 2026 U.S. Dist. LEXIS 65158 (D. Or. 2026) ................... 13, 18

*Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019) ........................................................................ 6

*Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885 (S.D. Cal. 2016) .................................................... 21

*Callier v. Am.-Amicable Life Ins. Co. of Texas*, 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022)..17

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ....................................................................
11

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) ...............................
3

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022) ........................................................
13

*Chinitz v. Intero Real Estate Servs.*, 2020 WL 7391299 (N.D. Cal. July 22, 2020) ................... 17

*Clouse v. Loan Depot, LLC*, 2025 WL 36107 (M.D. Fla. Jan. 6, 2025) ..................................... 18

*Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686 (5th Cir. 2021) .................................................... 6

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) .................................................... 8

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) .................... 19, 21

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) ................................................................ 6

*Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) ........................................................................... 6

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1996) ................................................................... 3

*Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607 (S.D. Cal. Nov. 24, 2025) ................................. 4

*Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086 (N.D. Cal. 2002) ............. 23, 24

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ...................................................... 6

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ....................................................... 2

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......................................... 20

*Hall v. Smosh Dot Com*, 72 F.4th 983 (9th Cir. 2023) .................................................... 12-15, 17

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ................................................................................ 20

*Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026) .................................. 1, 3-11

*Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) ..................................................... 8

*JACO Envtl., Inc. v. Appliance Recycling Ctrs. of Am., Inc.*, 2007 WL 951274 (N.D. Cal. Mar. 27, 2007) ............................................................................................................. 23, 24

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .................................................. 21

*Klassen v. Solid Quote LLC*, 2023 WL 7544185 (D. Colo. Nov. 14, 2023) .............................. 16

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) ................................................. 13

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ....................................................... 3

*Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015) .................................................. 13

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .............................................. 4

*Matthews v. Mid City Cannabis Club, Inc.*, 2021 WL 1567496 (C.D. Cal. Mar. 2, 2021) .......... 2

*Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141 (C.D. Cal. 2009) ............................................ 25

*Meyer Mfg. Co. Ltd. v. Telebrands Corp.*, 2012 WL 1189765 (E.D. Cal. Apr. 9, 2012) ............ 23

*Mujahid v. Newity, LLC*, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ...................................... 4

*Murch v. GPS Cap. Mkts., LLC*, 2025 U.S. Dist. LEXIS 169651 (D. Or. June 6, 2025) ............ 17

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917 (N.D. Cal. Mar. 3, 2025)....17

*Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220 (S.D. Cal. 2014) .............................. 16

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ................................................................... 21

*Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013) .......................................................... 3

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278 (N.D. Iowa June 9, 2022)..16

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ................................................ 3

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005) ............................................. 23, 24

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ................................ 4-11, 18

OPPOSITION TO MOTION TO DISMISS

-3-

*Silvers v. Verbata Inc.*, 2021 WL 6882156 (C.D. Cal. Oct. 8, 2021) ........................................ 21

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ............................................................. 20

*Taha v. Momentive Software, Inc.*, 2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026).. 4, 5

*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) ............................. 13

*Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354 (7th Cir. 2020) ............................................ 6

*Williams v. Bowman*, 157 F. Supp. 2d 1103 (N.D. Cal. 2001) ..................................................... 20

*Wilson v. Better Mortgage Corp.*, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) ...................... 10-11

*Wilson v. Easy Spirit, LLC*, 2026 WL 884170 (D. Conn. Mar. 31, 2026) ..................................... 9

*Wilson v. Medvidi*, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .................................................. 4

*Wilson v. Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. Jul. 21, 2025) .................................... 4, 9

*Yeti Data, Inc. v. Snowflake, Inc.*, 2020 WL 8174630 (C.D. Cal. Nov. 9, 2020) ........................ 23

**Statutes and Rules**

28 U.S.C. § 1391 ......................................................................................................... 20

28 U.S.C. § 1404 ..................................................................................................... passim

47 U.S.C. § 227 ...................................................................................................... passim

47 C.F.R. § 64.1200 ................................................................................................. 15-18

**INTRODUCTION**

This case concerns unsolicited telemarketing text messages sent by Defendant Shutterfly, LLC to a residential cellular telephone number listed on the National Do-Not-Call Registry. Defendant does not dispute that the messages were sent. Instead, Defendant advances a series of legal arguments that conflict with binding Ninth Circuit authority and asks this Court to transfer the action away from the district where Defendant itself is headquartered. The Motion should be denied.

First, Defendant's attempt to argue that text messages are not "calls" under the TCPA is foreclosed by controlling Ninth Circuit precedent. The Ninth Circuit has repeatedly held that text messages constitute "calls" within the meaning of the TCPA, including again earlier this year in *Howard v. Republican National Committee,* 164 F.4th 1119 (9th Cir. 2026). Numerous district courts within this Circuit have likewise rejected the precise arguments Defendant advances here.

Second, Plaintiff has adequately alleged—and submitted evidence establishing—that he is the subscriber and account holder associated with the telephone number at issue. Under *Hall v. Smosh Dot Com*, 72 F.4th 983 (9th Cir. 2023), that alone is sufficient to establish Article III standing. Defendant's effort to avoid *Hall* by focusing on another household user of the device directly conflicts with *Hall's* express holding that standing is not limited to the phone's "primary" or "customary" user.

Third, Defendant's argument that Plaintiff was required to personally register the telephone number on the National Do-Not-Call Registry likewise fails. The TCPA protects registered telephone numbers, not particular registrants, and courts overwhelmingly reject the outlier authority upon which Defendant relies.

Finally, Defendant fails to satisfy its burden under 28 U.S.C. § 1404(a). Plaintiff filed suit in the district where Defendant is headquartered and where Plaintiff understands the challenged conduct originated. Defendant identifies no meaningful witness or evidentiary inconvenience justifying transfer to Michigan. Instead, the transfer request appears motivated largely by Defendant's disagreement with settled Ninth Circuit authority governing the claims asserted here.

Accordingly, Defendant's Motion should be denied in its entirety.

## BACKGROUND

Plaintiff alleges that Defendant transmitted unsolicited marketing text messages to cellular telephone number (517) 769-XXXX in August, November, and December 2025. ECF No. 1 ¶ 17. Plaintiff alleges the number had been registered on the National Do-Not-Call Registry since November 13, 2024. *Id.* ¶ 16. Plaintiff further alleges he has been the subscriber associated with the number since June 2025, personally pays for the cellular plan, and uses the number for personal and residential purposes. *Id.* ¶¶ 9-14. The Complaint alleges the number is used primarily for personal and household communications, including communications with friends and family and personal appointments and purchases. *Id.* ¶¶ 11-12. Plaintiff alleges Defendant transmitted the messages more than thirty-one days after the number was registered on the National Do-Not-Call Registry. *Id.* ¶¶ 16-22.

## LEGAL STANDARD

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021). Indeed as the Ninth Circuit noted, "[t]he Rule 8 standard

contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

A motion challenging Article III standing is properly brought under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Such motions may be either facial or factual attacks. *Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). In a facial attack, the Court accepts the allegations as true and determines whether they are sufficient to invoke federal jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In a factual attack, the Court may consider evidence outside the pleadings. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). However, absent a full evidentiary hearing, disputed jurisdictional facts must still be viewed in the light most favorable to the nonmoving party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

## **ARGUMENT**

### I. **The Ninth Circuit Court of Appeals has Repeatedly Made Clear that Text Messages are Calls under the TCPA, and it did so again Earlier this Year.**

A statute enacted in 1991 that prohibits "vehicles" in a park applies equally to sedans and Cybertrucks, even though Cybertrucks did not exist at the time. So too here. The TCPA authorizes the Federal Communications Commission ("FCC") to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," 47 U.S.C. § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list, § 227(c)(3)(F).

Of course, text messaging didn't exist when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both courts and the FCC have long recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by

OPPOSITION TO MOTION TO DISMISS

-7-

"voice" or "text message." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Taha v. Momentive Software, Inc.,* 2026 U.S. Dist. LEXIS 54376, *7-8 (C.D. Ca. March ll, 2026); *Esquivel v. Mona Lee, Inc.*, No. 25 Civ. 00607, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025); *Mujahid v. Newity, LLC*, No. 25 Civ. 8012, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025); *Wilson v. Medvidi*, No. 25 Civ. 03996, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025); *Wilson v. Skopos Fin.*, *LLC*, No. 25 Civ. 00376, 2025 WL 2029274, at *4–5 (D. Or. Jul. 21, 2025).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

OPPOSITION TO MOTION TO DISMISS

-8-

Luckily for consumers nationwide, Shutterfly's arguments have been nearly uniformly rejected in this Circuit consistent with what the Ninth Circuit Court of Appeals held earlier this year with respect to text messages in *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1121 (9th Cir. 2026) ("a 'text message' constitutes a 'call' within the meaning of the TCPA").

**a. *Earlier this year, the Ninth Circuit Unequivocally Stated that a "text message" Constitutes a "call" within the meaning of the TCPA.***

Since *Satterfield*, no Court in the Ninth Circuit has dismissed a TCPA case holding that a text message is not a call. The argument is foreclosed. Indeed, in *Howard* 164 F.4th at 1121-24, the Ninth Circuit affirmed *Satterfield*'s central holding in another TCPA case:

> The key question, then, is whether the sending of this text message involved (1) "mak[ing] a[ ] call" or "initiat[ing] a[ ] telephone call" to that phone number, (2) "using an artificial or prerecorded voice." *Id.*

> We have previously held that, under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), it was "reasonable" to defer to the FCC's conclusion that the term "call" in § 227 includes a "text message." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, we think it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) ("*Chevron* is overruled."). *Satterfield* emphasized two key points about statutory construction that supported the FCC's understanding of a "call," *see Satterfield*, 569 F.3d at 953–54, and even under de novo review, those same two points support the conclusion that a "text message" constitutes a "call" within the meaning of the TCPA… the RNC's text message was a 'call.'

*Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273, at *3–4 (9th Cir. Jan. 13, 2026). There's not much Shutterfly's can say to that analysis, so it instead claims that the Ninth Circuit's decision in *Howard*, however, was also limited to claims asserted under Section 227(b), rather than claims under Section 227(c). However, this argument was squarely addressed, and rejected, in *Taha*:

While both cases reached these decisions in the context of analyzing § 227(b) of the TCPA, rather than § 227(c)(5) at issue here, neither *Satterfield* nor *Howard* elected to use language to limit the scope of their holdings. Both cases state that their holdings apply to "the TCPA," and that is how this Court interprets them.

Defendant argues that the addition of the word "telephone" changes the textual analysis when it comes to § 227(c)(5). However, this argument overemphasizes the significance of the word "telephone" in this context. "Telephone" is even used in the dictionary definition of "call" relied upon by the *Satterfield* and *Howard* courts. *See* Webster's Third New International Dictionary 318 (1981 ed.) ("call" means a "communicat[ion] with or [an attempt] to get in communication with a person by telephone"). To argue that the addition of the word "telephone" eliminates text messages ignores the redundancy of the term inherent to this definition. Defendant argues that "[b]oth at [the inception of the TCPA] and now, 'telephone call' means only a telephonic voice transmission." Ironically, the Ninth Circuit already expressed how Congress would make such a limitation in *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023), which is reference in *Howard*. In *Trim*, the Ninth Circuit held that the text messages at issue did not qualify under the TCPA because "because they did not include audible components" which contrasted with Congress's use of the word "voice" in the statute at issue. 76 F.4th at 1158, 1160-61 (analyzing "the disputed term—'voice'" in the context of 47 U.S.C. § 227(b)(1)(A)). Thus, had Congress intended to eliminate textual communications from § 227(c)(5) it would have used the phrase "voice call," rather than "telephone call."

*Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, at *7-*8 (C.D. Cal. Mar. 11, 2026) (cleaned up). The *Better Mortg.* Court also held likewise:

The Court holds, in accord with a growing consensus of case law, that § 227(c) of the TCPA applies to text messages for multiple reasons, developed below. In brief, although modern parlance tends to distinguish between phone calls and text messages, the meaning of "telephone call" in 1991—when the TCPA was enacted—was broad enough to encompass text messages. The overwhelming weight of authority holds that § 227(b), a neighboring section using the same term, covers text messages, and the meaning of "telephone call" in § 227(c) is at least as broad as that in § 227(b). The FCC has also interpreted both § 227(b) and (c) to apply to text messages…

Section 227(b) of the TCPA uses the same term as § 227(c): "telephone call." And numerous federal courts of appeals have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages. *See, e.g.*, *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("Although the text of the statute refers only to 'calls,' we have held that, under the TCPA, that term encompasses text

OPPOSITION TO MOTION TO DISMISS

messages." (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013))); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]."); *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."); *see also Satterfield*, 569 F.3d at 954 (deferring to FCC's reasonable interpretation of the TCPA "to hold that a text message is a 'call'")[6]; *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) (holding, under § 227(b), that receipt of one unwanted text message caused concrete injury sufficient for Article III standing)…

The weight of the above authority concerning § 227(b) strongly suggests that § 227(c)'s parallel usage of "telephone call[s]" applies to text messages. "[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning." *Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 372-73 (2d Cir. 2022) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005)); *see also Pulsifer v. United States*, 601 U.S. 124, 149, 144 S. Ct. 718, 218 L. Ed. 2d 77 (2024) ("In a given statute, the same term usually has the same meaning."). Here, nothing indicates that Congress intended for the same term in § 227(c) to cover fewer modes of telephonic communications than that in § 227(b)…

Contemporary dictionaries at the time the TCPA was enacted simply defined a "telephone call" as a "call" *Taha*, 2026 U.S. Dist. LEXIS 54376, at *7. For example, the 1991 Oxford Encyclopedic English Dictionary defines a "telephone call" simply as a "call," and defines "call" as "to communicate or converse with *by telephone* or radio." *See* "call," Oxford Encyclopedic English Dictionary 209 (2d ed. 1991). Under that definition, a "telephone call" is simply a communication made by telephone (or a radiotelephone, which a cell phone is), which plainly includes text messages sent from one telephone to another. That holding was not dependent on *Chevron* deference and reflects the functional reality that text messages are a form of telephonic communication regulated by the statute. Defendant's argument that the modifier "telephone" somehow narrows the term "call" to exclude text messages and include voice calls only elevates semantics over substance and ignores the broader statutory context.

-11-

Accordingly, whatever rhetorical distinction Defendant attempts to draw between § 227(b) and § 227(c), it cannot overcome controlling Ninth Circuit authority on the meaning of "call," and dismissal on that ground should be denied.

**b.  *Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text message calls.***

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added).

That definition plainly encompasses modern text message calls. As further explained below, the word "call" in the TCPA encompasses text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a 'call' within the meaning of the TCPA."). That interpretation follows from "the ordinary, contemporary, and common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed "[a]ny notice, word, or communication, no matter the mode and no matter how sent." *Message*, *Black's Law Dictionary* (6th ed. 1990).[1] So a "message" can be spoken *or* written. More generally, the definition of "telephone solicitation" focuses not on a communication's form but whether it has a commercial purpose. *See, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025). So, Congress referred to "call or message" disjunctively in order to capture the broadest possible range of potential communication mediums. *See, e.g.*, *Davis v.*

---

[1] *See also, e.g.*, *Message*, Webster's New Collegiate Dictionary (9th ed. 1991) ("a communication in writing, in speech, by signals"); *Message*, Oxford English Dictionary (2d ed. 1989) ("an oral or written communication sent from one person to another").

*HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). And, as discussed, in *Howard*, 164 F.4th, 1123–24, the Ninth Circuit reaffirmed *Satterfield's* central holding, even in the absence of *Chevron* deference.

Relatedly, Shutterfly's says that an entirely separate provision distinguishes between calls and text messages. It asserts that in 2018, Congress amended Section 227(e) and allegedly distinguished text messages from calls. As an initial matter, that reading discounts the fact that Congress explicitly directed that nothing in section 227(e) "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Consolidated Appropriations Act of 2018, 132 Stat. at 1094. That includes the judicial decisions and FCC rules and orders that made clear that "call" in section 227 includes "text messages." *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); *see, e.g.*, *Satterfield*, 569 F.3d at 954. As Judge Gettleman explained, this very action by Congress is an example of statutory *stare decisis* in which Congress implicitly *endorsed* the prevailing view at the time, that text messages are calls. *Rabbitt*, 2026 WL 851279 at *3-4 (cleaned up). Other Courts have agreed. For example, the District of Connecticut recently held that "the legislative history of the 2018 Amendments contains no evidence that Congress discussed the impact of the proposed Amendments on § 277(c)(5) [sic] or considered the private right of action at all when it passed the 2018 TCPA Amendments." *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *8 (D. Conn. Mar. 31, 2026); *Newell v. Childrens Dental Health Assocs, LLC*, No. 2:25-cv-05238, ECF No. 25 (E.D. Pa. Apr. 6, 2026) ("Congress expressly addresses its concerns about "*caller*

identification information" to both "voice" and "text" services. Thus, the face of § 227(e) further confirms our view that a "call" can implicate a voice conversation or a text conversation.").

### c. *The plain meaning of the word "call" includes text messages*

To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See United States v. Ezeta*, 752 F.3d 1182, 1185 (9th Cir. 2014) ("To determine a word's plain and ordinary meaning, we may refer to standard English language dictionaries.") Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

As noted by the *Taha* Court, the basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025). In this respect, the *Stockdale* court simply appears to have cherrypicked definitions from other dictionaries in support of its proposition while ignoring the vast majority of other dictionaries that defined a "telephone call" simply as a "call," which itself indicates no preference for vocal

communication. "Although many people assume that the first sense listed in a dictionary is the 'main' sense, that is often quite untrue." *United States Postal Serv. v. Konan*, 146 S. Ct. 736, 745 (2026). The definitions the *Stockdale* Court pointed to were the oldest, not primary. And we "do not presume that Congress intended the *oldest* usage, but rather the ordinary one in" 1991, and contemporaneous evidence shows that Congress understood text-based telephone calls to be "calls" in 1991. *Id.*; *see* Section I.c, *supra*.

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is, of course, a means of communicating with someone by telephone. So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954))

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"). So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9.

OPPOSITION TO MOTION TO DISMISS

-15-

**II.    The Plaintiff is the Subscriber of the Telephone Line that Received the Text Messages. As such, he has Standing to Pursue his TCPA Claim.**

Defendant principally argues that Plaintiff lacks standing because Michele Nelson also used the phone number at issue and because Defendant contends Plaintiff lacked sufficient connection to the Number. The argument fails both legally and factually. First, the Plaintiff has submitted a declaration that establishes:

> • he is the named Cricket Wireless account holder associated with the Number;
> • the Cricket account is solely in his name;
> • he personally pays the wireless bills;
> • he had unrestricted access to the device associated with the Number; and
> • he personally viewed and read the Shutterfly messages.

Exhibit 1, Nelson Decl. ¶¶ 2-12. The Cricket Wireless records submitted with Plaintiff's declaration corroborate Plaintiff's testimony and identify "JUSTIN NELSON" as the account holder during the relevant time period.

Second, Defendant's motion improperly assumes that only one individual may possess a legally privacy interest in a residential cellular telephone number. That is not the law, including in the Ninth Circuit. The Defendant was wise to anticipate that the Plaintiff would rely on *Hall v. Smosh Dot Com*, 72 F.4th 983 (9th Cir. 2023), because it is dispositive of this issue:

> Because Hall provided the phone to her son, Defendants argue that she has not suffered an injury, as she did not allege that she was "the *actual user* of the phone number to which Defendants sent the text messages [or] the *actual recipient* of those messages." The district court agreed. We now reverse and hold that **the owner and subscriber of a phone number listed on the Do-Not-Call Registry suffers an injury in fact when their phone receives text messages in alleged violation of the TCPA**…
>
> As noted above, Defendants argue that Hall has not been injured because she did not allege that "she was the *actual user* of the phone number to which Defendants sent the messages [or] the *actual recipient* of those messages." This contention boils down to the problematic proposition that the challenged text messages "were transmitted to '[Hall's] cellular telephone' and not [Hall] personally." But the relevant question for Article III standing purposes is simply whether Hall has

OPPOSITION TO MOTION TO DISMISS

-16-

suffered a cognizable injury. Because "a violation of the TCPA is a concrete, *de facto* injury," *Van Patten*, 847 F.3d at 1043, and the Do-Not-Call provisions of the TCPA proscribe unsolicited calls [**12] and text messages to phone numbers on the Do-Not-Call Registry, Hall's allegation that she received unsolicited text messages at a phone number that she placed on the Do-Not-Call Registry is sufficient to confer standing…

**<u>Nothing in our precedent or the text of the TCPA suggests that the owner of a cell phone must also be the phone's primary or customary user to be injured by unsolicited phone calls or text messages sent to its number in violation of the TCPA.</u>** Requiring a heightened level of phone use as a prerequisite for standing is contrary to our prior recognition that "[r]eceiving even one unsolicited, automated text message from [a telemarketer] is the precise harm identified by Congress," and sufficient to state an injury in fact under Article III. *See Chennette*, 50 F.4th at 1222. Moreover, standing is not exclusive. The fact that the primary or customary user of a phone may suffer a concrete injury from an unwanted call or text message does not preclude the phone's owner and subscriber from suffering the same. *Cf. Krakauer v. Dish Network, LLC*, 925 F.3d 643, 647 (4th Cir. 2019) ("If a wife, as the subscriber, lists a home telephone number on the Do-Not-Call registry, but her husband happens to be the one who receives the improper calls . . . [b]oth the wife and the husband can suffer the harm that Congress sought to deter.").

*Id.* at 988-990 (emphasis added). Based on Mr. Nelson's affidavit, there is no serious dispute that he is the "owner and subscriber" of the number and as a result of the Ninth Circuit's holding in *Hall*, there is no credible assertion that he does not have standing to pursue his claim.

Indeed, Courts routinely recognize that multiple household members may possess privacy interests in shared residential communications and household devices, including in the Ninth Circuit. *See e.g. Binetti v. Colo. Tech. Univ., Inc.,* 2026 U.S. Dist. LEXIS 65158, *11-12 (D. Or. 2026) ("In a recent Ninth Circuit case addressing Article III standing, the court concluded that both a phone's primary user and that phone's owner and subscriber may suffer an injury for the same violation of the TCPA….The court's language makes clear that both the owner/subscriber and the customary user of a cellular phone may be injured by, and therefore bring a claim against, unwanted telemarketer contact."); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325-326 (3rd Cir. 2015) ("In passing the Act, Congress was animated by "outrage[] over the

OPPOSITION TO MOTION TO DISMISS
-17-

proliferation" of prerecorded telemarketing calls to private residences, which consumers regarded as "an intrusive invasion of privacy" and "a nuisance." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227); *see also id.* § 2(9), (12)-(13). The congressional findings describe the persons aggrieved by these calls using a variety of labels: "consumers," "**residential telephone subscribers**,"  [*326]  and "receiving part[ies]." *Id.* § 2(5)-(6), (10)-(12). (emphasis added).).

*Hall* is even more compelling here because, unlike the plaintiff in Hall, Mr. Nelson is not merely someone with an abstract privacy interest in the Number—he is the actual subscriber and account holder associated with the Number. The Ninth Circuit repeatedly emphasized in *Hall* that subscriber status itself creates a legally protected privacy interest sufficient for Article III standing. The Court specifically held, "We now reverse and hold that the owner and subscriber of a phone number listed on the Do-Not-Call Registry suffers an injury in fact when their phone receives text messages in alleged violation of the TCPA." *Hall*, 72 F.4th at 988. That is precisely the circumstance presented here. Mr. Nelson has submitted evidence establishing that:

- he is the named Cricket Wireless account holder associated with the Number;
- the account is solely in his name;
- he personally pays the bills; and
- the Number was associated with his account during the relevant time period.

Exhibit 1, Nelson Decl. ¶¶ 2-6. The Cricket Wireless records corroborate those facts.

Defendant attempts to avoid Hall by focusing on the fact that Michele Nelson was a regular user of the device associated with the Number. But *Hall* expressly rejected the notion that standing belongs only to the "actual user" or "primary user" of the phone, "Nothing in our precedent or the text of the TCPA suggests that the owner of a cell phone must also be the

phone's primary or customary user to be injured by unsolicited phone calls or text messages sent to its number in violation of the TCPA." *Hall*, 72 F.4th at 990. Indeed, *Hall* involved a subscriber who had provided the phone to her son for his use. Yet the Ninth Circuit still held that the subscriber herself suffered a concrete injury sufficient for Article III standing because the unwanted messages were directed to a phone number associated with her protected privacy interests. *Id.* at 988-90. Mr. Nelson's standing is therefore even clearer than the plaintiff's standing in *Hall*. Unlike *Hall*, where another individual was the primary user of the device, Mr. Nelson remained the sole named subscriber and account holder for the Number throughout the relevant period. He personally paid for the account and maintained access to the device. Under *Hall*, those facts are more than sufficient to establish Article III standing.

**III.    There is no Requirement that the Plaintiff have Personally Registered the Telephone Number on the Do Not Call Registry. If there was, Millions of <u>Americans Would not be able to Utilize the Benefits of the Do Not Call Registry.</u>**

The provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that matter, such a holding would also run afoul of the 2003 TCPA Order, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision

of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Watson*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023); *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual whose name appears on the bill. Notably, Defendant does not cite a single case to support this position. Further, this position

OPPOSITION TO MOTION TO DISMISS

-20-

has been rejected by other courts.”).

*Rombough* was most notably rejected in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that “borders on the frivolous.” The *Callier* court went on to state:

> *Rombough‘s* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). The *Callier* Court is far from alone, with many Courts in this Circuit holding the same. *See e.g. Murch v. GPS Cap. Mkts., LLC,* 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025) ("After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*."). Indeed, three years after *Callier*, another federal court recently made forcefully clear how far of an outlier *Rombough* was:

> the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry provision need not allege or prove that he personally registered his phone number to state a claim. Every court to consider this issue — with one exception — has reached the same conclusion. *See, e.g., Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, 2020 WL 7391299, at *14 (N.D. Cal. July 22, 2020); *Abrahamian v. loanDepot.com LLC*, No. 23-cv-00728-PHX-SMB, 2024 U.S. Dist. LEXIS 44009, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024). The exceptional case is *Caitlin Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15-CJW-MAR, 2022 U.S. Dist. LEXIS 124614, 2022 WL 2713278, at *2-3 (N.D. Iowa June 9, 2022) (dismissing claim because plaintiff did not allege that she personally registered her phone number in the NDNC Registry). In *Rombough*, the court focused on the following language from the implementing regulation: "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber *who has registered* his or her telephone number on the" NDNC Registry." 47 C.F.R. § 64.1200(c) (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next

sentence of the implementing regulation, which provides that "registrations must be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917, *8-9 (N.D. Ca., March 3, 2025).  Even more recently, the Court in *Binetti v. Colo. Tech. Univ.,* No. 6:25-cv-01049-AP, 2026 WL 812365, at *4 (D. Or. Jan. 21, 2026) held:

> Defendant further argues that Plaintiff's claim should be dismissed because he failed to adequately allege that he personally registered his phone number on the National DNC registry. The court disagrees that this is required. Indeed, Defendant's narrow reading that an aggrieved party must have personally registered their phone on the national DNC list is at odds with both the statutory language and the implementing regulations.

> In implementing the TCPA Congress sought to "prohibit all unsolicited telemarketing calls to phone numbers in the NDNC Registry, without limitation as to who had registered the phone numbers." *Nichols v. eHealthInsurance Servs. Inc.*, No. 23-CV-06720-EKL, 2025 U.S. Dist. LEXIS 37917, 2025 WL 689721, at *2 (N.D. Cal. Mar. 3, 2025)). Additionally, the TCPA "mandated that the implementing regulations 'prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in the database.'" *Id.* (citing 47 U.S.C. § 227(c)(3)(F)). And "[t]his prohibition does not turn on whether the person who receives the call personally listed the phone number in the NDNC Registry." *Id.* (citing *Hall*, 72 F.4th at 990 n.8 ("The Do-Not-Call Registry lists numbers, not names.")).

> Defendant cites *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15-CJW-MAR, 2022 U.S. Dist. LEXIS 124614, 2022 WL 2713278 (N.D. Iowa June 9, 2022), in support of its reading of the regulations. In *Rombough*, the court concluded that a private right of action was only available to individual telephone subscribers who had personally registered their number on the DNC registry. *Id.* at *2. The *Rombough* court pointed to the plain language of the implementing regulations, holding that "the plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber who has **[*14]** registered his or her telephone number on the national do-not-call registry." *Id.* But most courts have resoundingly rejected the holding in *Rombough* as at odds with both the language and the purpose of the statute and implementing regulation. *See, e.g. Clouse v. Loan Depot, LLC*, No. 8:23-CV-2720-CEH-SPF, 2025 U.S. Dist. LEXIS 1382, 2025 WL 36107, at *4 (M.D. Fla. Jan. 6,

2025) (declining to follow *Rombough* as an "outlier"). This Court is similarly not persuaded by the reasoning in *Rombough* and declines to impose additional pleading requirements beyond those identified in the regulations.

This Court should hold the same.

The policy consequences of Defendant's rule underscore its untenability. Hundreds of thousands of Americans change phone numbers every year. If Defendant's theory were correct, each consumer inheriting a number that had already been placed on the Registry would lose their protections. Telemarketers could then flood those numbers with impunity, despite Congress's intent to stop unwanted solicitations. Nothing in the statute, regulations, or case law supports this loophole, and this Court should not create one especially where Defendant seeks transfer away from the very district in which it chose to locate its headquarters.

Accordingly, the Court should reject Defendant's invitation to import a personal-registration requirement that appears nowhere in the statute and would eviscerate its protections.

### IV.    The Court Should Deny Defendant's Motion to Transfer Venue away from the Defendant's Headquarters where the Plaintiff Selected to File.

Defendant alternatively requests transfer of this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). The request should be denied because Defendant fails to satisfy its heavy burden of demonstrating that transfer is clearly warranted to shift the case away from the Plaintiff's selected forum *where the Defendant* resides. The party seeking to transfer venue bears the burden of showing that convenience and justice require transfer. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

28 U.S.C § 1391(b) governs venue in federal court. Under § 1391(b), venue is generally allowed for "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject to the action is situated." 28 U.S.C § 1391(b). An entity is deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction. 28 U.S.C § 1391(c)(2). There is no dispute that the Northern District of California is a proper venue as the Defendant is headquartered here.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought[.]" 28 U.S.C. § 1404(a); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1041 (S.D. Cal. 2023). Section 1404 "place[s] discretion on the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). District courts employ a two-step framework to resolve a transfer motion. A court first asks whether the plaintiff could have originally brought the action in the proposed transferee forum. *See Hoffman v. Blaski*, 363 U.S. 335, 344, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960). If the action could have been brought there, then the court weighs "a number of case-specific factors" based in convenience and fairness. *Stewart Org.*, 487 U.S. at 29-30. Here, considering that the Plaintiff could have brought the case in Michigan, the Court can move on to the second step.

When an action could have been brought in the potential transferee court, a district court must decide whether transfer is appropriate. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1105-06 (N.D. Cal. 2001). Section 1404(a) expressly identifies the following considerations:

"convenience of the parties," "convenience of ... witnesses," and "the interest of justice." 28 U.S.C. § 1404(a). Although the statute identifies only these factors, courts deem "*forum non conveniens* considerations [to be] helpful in deciding a § 1404 transfer motion." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). District courts, therefore, consider the following factors to decide a transfer motion: (1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) relative court congestion and time to trial in each forum. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011). "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Martin v. Glob. Tel\*Link Corp.*, No. 15-cv-00449-YGR, 2015 U.S. Dist. LEXIS 59474, 2015 WL 2124379, at \*2 (N.D. Cal. May 6, 2015).

"Ordinarily, a strong presumption exists in favor of a plaintiff's choice of forum." *Byler v. Deluxe Corp.,* 222 F. Supp. 3d 885, 904 (S.D. Cal. 2016) (*citing Piper Aircraft,* 454 U.S. at 255). "This presumption is overcome only when private and public interest factors 'clearly' point toward an alternative forum." *Id.* (*citing Piper Aircraft,* 454 U.S. at 255). "This presumption is overcome only when private and public interest factors 'clearly' point toward an alternative forum." *Id.* (*citing Piper Aircraft,* 454 U.S. at 255).

Relatedly, in evaluating justice interests under § 1404(a), courts disfavor parties appearing to engage in forum shopping—whether that party is moving to transfer or moving against transfer. *See e.g., Silvers v. Verbata Inc.*, No. 221CV05808VAPRAOX, 2021 U.S. Dist. LEXIS 253703, 2021 WL 6882156, at \*4 (C.D. Cal. Oct. 8, 2021) (denying defendants' motion

to transfer venue where defendant evinced forum shopping by moving to transfer after unfavorable related judgment from arbitrator within the district). Indeed, Defendant's own motion repeatedly acknowledges that Shutterfly is headquartered in California and that its business operations are centered here. The Northern District of California therefore possesses a strong local interest in adjudicating claims involving alleged unlawful telemarketing conduct by a California-based corporation operating from this District.

The timing and substance of Defendant's transfer request further underscore why transfer would not serve the interests of justice. Defendant's motion asks this Court to transfer the action away from the very Circuit that has squarely addressed the standing and text-message issues central to this case, as discussed above. Rather than litigate under the controlling precedent of the Circuit in which it is headquartered, Defendant seeks transfer to another jurisdiction while simultaneously advancing arguments directly at odds with settled Ninth Circuit authority. That sequence strongly suggests that Defendant's transfer request is driven not by convenience, but by dissatisfaction with the governing law of this Circuit.

Courts routinely reject transfer motions where the requested transfer appears motivated by an effort to evade unfavorable circuit precedent or obtain a perceived tactical advantage. *See, e.g., Silvers,* 2021 U.S. Dist. LEXIS 253703, at *4. That concern is especially acute here because Defendant is not an out-of-state corporation haled into a distant forum. Shutterfly is headquartered in this District. It conducts substantial operations here. The alleged telemarketing conduct emanated from here. And the Ninth Circuit law Defendant seeks to avoid governs corporations operating from this District. Defendant should not be permitted to invoke the convenience statute as a mechanism to escape controlling Ninth Circuit authority merely because that authority forecloses key portions of its motion to dismiss. Allowing transfer under these

OPPOSITION TO MOTION TO DISMISS

-26-

circumstances would undermine the strong public interest in predictable and consistent application of Circuit law to corporations headquartered within the Circuit itself. Moreover, retaining venue in this District promotes uniformity and judicial efficiency because this Court is already bound by and familiar with the Ninth Circuit precedent governing the TCPA issues presented here. Transferring the case to another district would risk inconsistent application of federal law and would reward precisely the type of tactical forum maneuvering courts caution against under § 1404(a).

Courts note that the convenience of witnesses is "often the most important factor considered by the court when deciding a motion to transfer for convenience." *Yeti Data, Inc. v. Snowflake, Inc.*, 2020 U.S. Dist. LEXIS 247752, 2020 WL 8174630, at *3 (C.D. Cal. Nov. 9, 2020). "Importantly, while the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Id.* (citing *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005)). Likewise, the convenience of an employee of the party seeking transfer is "entitled to little weight" because "[d]efendants [*8] will be able to compel [the employee's] testimony at trial." *See JACO Envtl., Inc v. Appliance Recycling Centers of Am., Inc.*, No. 3:06-cv-06601-JSW, 2007 U.S. Dist. LEXIS 27421, 2007 WL 951274, at *4 (N.D. Cal. Mar. 27, 2007). To show inconvenience for witnesses, "the moving party should state the witnesses' identities, locations, and content and relevance of their testimony." *Meyer Mfg. Co. Ltd. v. Telebrands Corp.*, No. 2:11-cv-03153-LKK-DAD, 2012 U.S. Dist. LEXIS 49724, 2012 WL 1189765, at *6 (E.D. Cal. Apr. 9, 2012) (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092-93 (N.D. Cal. 2002)).

Defendant has made no such showing here. Defendant identifies no non-party witness located in Michigan whose testimony would be unavailable in California or materially

inconvenienced by litigating in this District. Nor does Defendant identify any specific witness testimony uniquely tied to Michigan, besides the Plaintiff who has decided to file here. That omission is fatal because generalized statements regarding the convenience of witnesses are insufficient. *Florens Container v. Cho Yang Shipping,* 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002).

By contrast, the witnesses most likely to possess relevant knowledge regarding the claims and defenses in this action are located in or directed from California. Relevant corporate witnesses concerning Shutterfly's telemarketing practices, consent procedures, vendor relationships, marketing campaigns, compliance policies, databases, and text-message systems are all likely located within or controlled from Defendant's California headquarters. Defendant's records concerning the text-message campaign at issue are likewise presumably maintained or controlled from California.

To the extent Defendant relies on the convenience of its own employees, that consideration carries minimal weight because Defendant can compel those witnesses to testify regardless of forum. *See JACO Envtl., Inc. v. Appliance Recycling Centers of Am., Inc.,* 2007 U.S. Dist. LEXIS 27421, at *4 (N.D. Cal. Mar. 27, 2007). The much more significant inquiry—the convenience of non-party witnesses—therefore favors maintaining venue in this District because Defendant has failed to identify any material non-party witness who would benefit from transfer. Indeed, the practical reality is that the main issues in this case concern Defendant's conduct, Defendant's telemarketing systems, Defendant's policies, Defendant's consent practices, and Defendant's corporate decision-making. Those subjects overwhelmingly point toward California, not Michigan. Courts routinely deny transfer motions under materially similar circumstances. *See Saleh v. Titan Corp.,* 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (denying

transfer where the defendant was headquartered in the chosen forum and where transfer would merely shift inconvenience between parties).

Defendant's repeated references to Plaintiff's unrelated TCPA lawsuits likewise do not support transfer. Those cases involve different defendants, different communications, different factual allegations, and different legal defenses. The mere existence of unrelated TCPA litigation involving Plaintiff does not diminish Plaintiff's entitlement to select a proper forum in this action. Defendant also attempts to characterize Plaintiff's forum choice as "forum shopping." That assertion is baseless. Plaintiff did not file suit in a random or unrelated jurisdiction. He filed suit in the district where Defendant maintains its headquarters and where Plaintiff understands the conduct at issue originated. Exhibit 1, Nelson Decl. ¶ 21.

Ease of access to the evidence also weighs against transfer since Shutterfly is located here. However, the Plaintiff recognizes that electronic evidence is easily accessible in any district and, if any hardcopy evidence exists elsewhere, technology has made it easier for documents to be **transferred** to different locations. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009).

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Shutterfly, LLC's Motion to Dismiss and deny Defendant's alternative Motion to Transfer Venue. In the alternative, should the Court determine that any pleading deficiency exists, Plaintiff respectfully requests leave to amend.

OPPOSITION TO MOTION TO DISMISS
-29-

**PLAINTIFF**, individually and on behalf of all others similarly situated,

DATED this 19th day of May, 2026.

By: */s/ Anthony I. Paronich*
Anthony I. Paronich, *Pro Hac Vice*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorney for Plaintiff and the putative Class*